ALBANY,<br>Oct. 1832.<br>〜〜〜<br>Gurnsey<br>v.<br>Lovell.

New trial granted.

---

GURNSEY & KNIGHT <i>vs.</i> LOVELL.

A *justice of the peace* is not limited in the exercise of any official act which he is authorized to perform to the town to which he was chosen, except in the *trial of civil causes.*

Process, whether *civil* or *criminal*, against a person by a wrong or fictitious name, would not, previous to the acts of 1830, justify an arrest, although the person taken was the one intended to be arrested.

ERROR from the Saratoga common pleas. Lovell sued Gurnsey and Knight for *false imprisonment.* The defendants pleaded the general issue, and specially that Lovell was arrested by Knight, (a constable,) on a warrant issued by C. Hageman, one of the justices of the peace of the county of Saratoga, commanding *John Doe* and *Richard Roe* to be taken and brought before him on complaint that they had disturbed a religious meeting ; averring that Lovell and one of the persons named in the warrant was one and the same person, and was as well known by one name as the other. The plaintiff replied denying the issuing of the warrant, and that he was as well known by the name of John Doe or Richard Roe as that of Daniel W. Lovell. On the trial it appeared that the plaintiff was arrested in August, 1829, on a warrant issued by C. Hageman, a justice of the peace of the town of *Cliftonpark ;* that the warrant was issued *in the town of Milton,* and the plaintiff brought before the justice there, tried and convicted, and committed to jail. The defendants offered in evidence the warrant, a record of conviction in pursuance thereof, and a warrant of commitment, which it was objected ought not to

be received, on the ground that the justice had no jurisdic-
tion in the matter, and the objection was sustained. The
court charged the jury that the justice had no authority to
act judicially out of the town for which he was elected and
in which he resided. They also submitted the question of
*misnomer* to the jury, although the bill of exceptions brought
up to this court contains no evidence on the subject. The
jury found that the plaintiff was known only by the name
of *Daniel W. Lovell*, and assessed his damage at $125.
The defendants having excepted to the decision of the
court, sued out a writ of error.

*M. T. Reynolds*, for plaintiffs in error.

*S. Stevens*, for defendant in error.

*By the Court*, SAVAGE, Ch. J. The jury could not regu-
larly decide an issue in relation to which all evidence had
been excluded ; but if the finding had been regular it would
be conclusive upon the defendants below, for if the justice
had jurisdiction to arrest John Doe and Richard Roe, a
warrant against them would not, *at the time when this arrest
was made,* justify the arrest of any other person. The de-
fendants could nol justify the arrest of the plaintiff by a
wrong name, though he was the person intended to be ar-
rested, unless he was known as well by one name as the
other. 8 *East*, 328. 6 *Cowen*, 456. 7 *id*. 332. 3 *Wen-
dell*, 350. 4 *id*. 555. By the act to amend certain provis-
ions of the revised statutes, passed April 20, 1830, *Session
Laws of* 1830, *p*. 395, § 282, it is enacted that " when the
name of any defendant shall not be known to the plaintiff,
he may be described in the summons or warrant by a ficti-
tious uame, and if a plea in abatement be interposed by
such defendant, the justice before whom the suit is pending
shall amend the proceedings according to the truth of the
matter, and shall thereafter proceed therein in like manner
as if the defendant had been sued by his right name ;" and
there is a general provision, 2 *R. S*. 347, § 3, where the
name of any defendant is not known, a capias may be issued

against him by a ficticious name. This provision does not apply to this case, having been passed after the arrest.

The court below decided that the justice had no authority to act judicially out of the town for which he was elected and in which he resided ; this was excepted to, and is the only question regularly before us. The old constitution of this state recognized justices of the peace, and provided that new commissions to them should be issued once in three years. By an act passed in 1813, it was enacted that in every county of this state, fit and discreet men should from time to time be appointed and commissioned justices to keep the peace in the same counties, &c. Such had been substantially the phraseology of the previous laws of 1801 and of 1787. Justices of the peace have therefore always until 1818 been county officers, and as justices, strictly speaking, are so yet. These officers are of very ancient date. So long ago the 18 Edward 3d, it was ordained that two or three of the best reputation in each county should be assigned to be keepers of the peace ; but these being found rather too few, the number was increased ; and afterwards the number, through the ambition of individuals, became so large, that it was thought necessary by statute to restrain them. 1 *Black. Comm.* 352. The same cause operated here, together with the popular idea of carrying justice to every man's door, and in 1818, the legislature, upon the recommendation of the governor, passed a law limiting the number of justices to *four in each town* in a county. Justices of the peace were originally mere conservators of the peace, and had no jurisdiction in civil matters ; but various powers have been given by statute from time to time, until, as Blackstone says, such an infinite variety of business has been heaped upon them, that few care to undertake and fewer understand the office. 1 *Black. Comm.* 354. This must be understoood of England alone, for in this state there has been no difficulty in procuring incumbents who are qualified, though the office is always important and sometimes laborious. I have refered to the English law and practice for the purpose of shewing that in that country, from which we have borrowed our civil institutions, these

magistrates are *county officers ;* and if they have been limited in their jurisdiction, it is by virtue of our own statutes. The several statutes conferring upon them power to try civil causes to the amount at first of $25, and afterwards of $50, contained no limitation of the exercise of their powers to any town ; they were at liberty to act and did act any where within their counties. The first limitation as to suits before them related to *parties* only ; it was enacted that all actions should be brought in the town where either the plaintiff or defendant resided, unless the defendant had absconded or the plaintiff was a non-resident. *Laws of* 1818, *p.* 84, § 23. The act of 1818 had the effect to render these officers *town officers to a certain extent. id. p.* 50, § 2. As there could be but four in each town, and as each town had its complement, a justice removing into another town became a supernumerary, and could not officiate ; but there was nothing in the act of 1818, nor in any other that I am aware of, until 1830, when the revised statutes took effect, which limited the exercise of their official acts to the town. At present "justices of the peace must reside in the town for which they were chosen ; and shall not try a *civil cause* in any other town, except in cases otherwise provided for by law," 1 *R. S.* 102, § 12 ; but now there is no law limiting a justice to act in his own town, except in the trial of a civil cause. He may now act as conservator of the peace, and execute his criminal jurisdiction any where in the county ; he may send his civil process into any part of the county, and I find nothing to prevent him from issuing his process at any place in the county ; but he shall not hold a court for the trial of a civil cause out of his own town, and if he removes from the town in which he was elected, he forfeits his office. By the act for suppressing immorality, 2 *R. L.* 193, 5, any person who shall wilfully disturb any assembly of people met for religious worship, may be convicted before any *justice of the peace of the county ;* and if he does not pay the fine or give security according to the same statute, such justice has power to commit such offender to the common jail of the county. There is no ambiguity in the statute as to the jurisdiction of any justice of the peace within the county where the offence was

committed. It is said that justices are town officers; they are so as to the mode of election to office, and as to continuance in office for the term of office for which they were elected; so are constables and other officers, yet they exercise their offices throughout the county, unless restrained by law. The cases *Ex parte McCollum* and *The People* v. *Garcy*, 6 *Cowen*, 650, do not decide that a justice cannot exercise his official duties out of the town for which he was appointed. The court erred, therefore, in deciding that a justice has no authority to act judicially out of the town for which he was elected.

Judgment reversed, and *venire de novo* awarded to Saratoga common pleas.