## THE PEOPLE *v.* KEELER.

A justice of the peace elected to fill a vacancy created otherwise than by the expiration of a regular term, is entitled to enter upon his office immediately after the election.

The term of a justice of the peace appointed by the governor to fill a vacancy, terminates upon the election of a person to fill the residue of the unexpired term, at the next annual town meeting.

So far as the act (*ch.* 28 *of* 1849 ), " to provide for filling vacancies in offices," may be construed as extending the term beyond such election, it is unconstitutional.

Whether that act applies *to* vacancies in *the office of justice of the peace,* or any offices except those which may be filled at the general state election in November, *Quere.*

APPEAL from the Supreme Court. The attorney-general, in May, 1856, commenced an action in the name of the

people, in the nature of an information, and by the complaint charged the defendant with having usurped and intruded into the office of justice of the peace of the town of Kortright, in the county of Delaware. The defendant put in an answer to which the plaintiffs demurred, and the Supreme Court overruled the demurrer and gave judgment for the defendant, with costs. This judgment having been affirmed at a general term in the third district, the attorney-general appealed.

The facts admitted by the pleadings are as follows: The annual town meeting in Kortright is held in February each year: At the town meeting in 1854, Theodore F. Langley was elected a justice of the peace for the full term of four years from January 1, 1855, and entered upon the duties of the office on the last mentioned day, and held the same until the first day of June in that year, when he died. On the twenty-eighth day of July following, Governor Clark, by writing under his hand and the great seal of the state, appointed the defendant to fill the vacancy. On the ninth of August thereafter, he took the oath and entered upon the office, and has since executed its duties. The annual town meeting in 1856 fell on the twelfth day of February, and on that day Stephen Forman was chosen a justice of the peace, by a majority of the qualified voters of Kortright, to fill the vacancy occasioned by the death of Langley. He immediately took the oath of office and claimed to be entitled to enter upon its duties. The answer admitted the legality of Forman's election, but claimed that he was not entitled to enter upon the office until the 1st day of January, 1857.

*John H. Reynolds*, for the people.

*W. Murray, Jr.*, for the respondent.

DENIO, J. Langley having died in office in June, 1855, the ensuing town meeting in February, 1856, presented the

legal occasion for electing a person to fill the vacancy thus arising. A choice was accordingly made, and Forman being the successful competitor, was elected a justice of the peace of the town of Kortright, to fill the vacancy. No question is made as to the legality of that election, and there can be none. But in the interval between the death of Langley and the occurrence of the town meeting, namely, in July, 1855, the governor had appointed the defendant to fill the vacancy. The terms of the appointment are not stated in the pleadings; but as it could be made, if at all, only under the act of 1849 (*ch.* 28), it must have been for the period mentioned in that act, that is to say, until the commencement of the political year next after the annual election of 1856. This, if the annual election means the annual town meeting, as is argued, would make the defendant's term of office extend to January 1, 1857, if the appointment is legal. The contest between the parties relates to this period of time, that is, from the aforesaid town meeting in February, 1856, until the first day of January following; the attorney-general maintaining that Forman was entitled to enter upon the office immediately after his election, and the defendant claiming that the election gave him only the right to the office on the first day of January, 1857, some eleven months after the election, when his, the defendant's, term would, according to the argument, expire. Upon this, two inquiries are presented: first, whether such an appointment as was made by the governor in this case was authorized by the constitution; and secondly, whether the act of 1849 embraced the case of a vacancy in the office of a justice of the peace. The last question is not material to the decision of the case, unless the first is resolved in favor of the defendant.

The constitutional provisions bearing upon the case, are the following : " The electors of the several towns shall, at their annual town meeting, and in such manner as the legislature may direct, elect justices of the peace, whose term

of office shall be four years.  In case of an election to fill a vacancy occurring before the expiration of a full term, they shall hold for the residue of the unexpired term.  Their number and classification may be regulated by law."  (*Art.* 6, § 17.)

" The legislature shall provide for filling vacancies in office; and in case of elective offices, no person appointed to fill a vacancy shall hold his office by virtue of such appointment, longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy."  (*Art.* 10, § 5 ).

Pursuant to the first of these provisions, the legislature had determined that there should be four justices in each town, who are to be divided into four classes, so that one shall be elected in each year.. (1 *R. S.*, 111, § 35).   Where a justice is chosen for the full term, he is to enter upon his duties on the first day of January next succeeding the election; but where the election is to supply a vacancy, the person chosen is to take the oath of office and enter upon his duties immediately.  (*Laws of* 1829, *ch.* 356, § 2 ; *Laws of* 1830, *ch.* 290, § 1).

In considering the question of the constitutional power of the legislature to postpone the commencement of the term of office of a person chosen to supply a vacancy in this office, we are to bear in mind that the constitution declares that a person so chosen shall hold for the residue of the unexpired term.   If this language is to be understood in its most obvious meaning, there is no authority in the legislature to abridge that residue and deprive the party chosen of a part of it ; or to divide it, giving to a person designated by appointment a portion of it, and to the person chosen at the town meeting the remainder.   By the system of the constitution, the office of justice of the peace was made an elective office.   It was not only elective when a full term was to be supplied, but also when there was a fraction of a term left to be provided for on account of the

death, resignation or removal of an incumbent. The only vacancy to be supplied by appointment which could possibly arise, according to these arrangements, would be during the period between the death, &c., of the incumbent and the occurrence of the next annual town meeting. It would be preposterous to say that the office was vacant when there was a person at hand who had been chosen by election in the manner required by the constitution, whose term of service had commenced, and who stood ready to serve. In a case which may be supposed, and which is not unlikely to occur, the mandate of the constitution, that a person chosen to fill a vacancy shall hold for the residue of the unexpired term, would, upon the defendant's position, be entirely disobeyed. Suppose the term of Langley to have expired on the first day of January, 1857, Forman, on being elected at the town meeting of 1856, would, according to the constitution, have been entitled to serve during the remainder of the term; but if the defendant's position is sustained, the office during that whole period would belong to a person appointed by the governor. In other words, the election to fill the vacancy, though made according to the constitution, would be wholly nugatory.

But the other provision of the constitution which has been referred to, must not be lost sight of. The legislature is required to provide for filling vacancies in office. So far there is no conflict between the two. If a justice die during the year a vacancy necessarily arises; and without legislative intervention it must continue until the next town meeting; but, under the power above mentioned to provide for filling vacancies, the legislature might properly direct it to be supplied by an executive appointment. Such an appointment would be coextensive with the vacancy, that is, it would extend to the next annual town meeting. This is all that the case would require, and all that could be done consistently with the constitution, unless the power of the legislature is enlarged by the language which follows: "No

The People *v.* Keeler.

person appointed to fill a vacancy (in an elective office) shall hold his office, by virtue of such appointment, longer than (until) the commencement of the political year next succeeding the first annual election after the happening of the vacancy." I will assume for the present that the words "annual election" as here used, are to be understood in a general sense, so as to embrace town meetings as well as state elections, according to the exigency of the particular case. The language is not that the person appointed shall hold the office for the period indicated, but that he shall not in any case hold it longer. But it may be said the power is conferred to provide for an appointment which shall continue for the whole time mentioned, and where the power exists the court is not allowed to inquire whether it has been properly exercised in a given case. The argument refers to a sound principle of constitutional law, but upon a question of construction we must look at all the language of the instrument to be construed. The power conferred is to provide for the filling vacancies in office, and it cannot be made to embrace the authority to provide an incumbent for an office not vacant, or for a period beyond the vacancy, unless the intention is clear.

The direction that the incumbent selected to fill a vacancy shall not hold longer than until a certain period, no doubt implies that one may in some cases be appointed to hold until that period, but it does not prove that under all circumstances an appointment for so long a time may be made. Nearly all the offices provided for by the constitution have fixed terms of service. If a vacancy occurs during the term, it is to be filled (if no particular provision for the particular office is made by the constitution itself) pursuant to the provision under consideration; but in the case of elective offices, an appointment to fill the vacancy is so limited in duration as to preserve as far as practicable the elective principle. Except for a consideration to be presently mentioned, the limitation would have been simply until

the next annual election. But at the commencement of the government under the constitution, the principal state offices under the former constitution ceased on the last day of the year 1847, and the terms of new state offices commenced on the first day of January 1848. ( *Art.* 14, §§ 1, 3.) The first day of the calendar year was fixed on as the commencement of the political year. The constitution fixed the time for the annual election for the Tuesday succeeding the first Monday of November, subject to be changed by the legislature. ( *Art.* 3, § 9; *Art.* 14, § 1.) This was the general election at which the principal officers were to be chosen. ( *Art.* 4, § 3 ; *Art.* 5, 1 – 4. ) Thus a period of nearly two months intervened between the election and the commencement of the terms of the officers elected. And this feature would continue permanently unless the time for holding the general election should be changed ; and as convenience would always require some length of time for ascertaining and making known the result of the canvass of a state election, it followed of course that there would always be a space between the election and the commencement of the terms of office. The method which should preserve the least possible departure from the elective principle would have been to allow the appointment, to fill a vacancy, to extend only to the next general election. But if the regular incumbent died during the last year of his term, there would inevitably be a vacancy in the office for the period between the election and the commencement of the next year, unless an election for the few weeks comprising this interval was allowed. In any case great practical inconvenience would be occasioned by having the term commence immediately after the election. Hence instead of the nearest possible approximation to the elective theory, the convention adopted that which was practically the nearest, by allowing an appointment to fill a vacancy to extend to the commencement of the next political year after the election. Such an appointment to a state office would still be for the vacancy,

The People *v.* Keeler.

and would not embrace a longer period. The space of time between the election and the beginning of the next year would be a part of the term of the late incumbent. The appointee would hold to the first day of January succeeding the election, and the person chosen by election would enter into the office on that day. It is apparent that the motives for this arrangement are for the most part inapplicable to the case of justices of the peace who are to be chosen at town meetings. The results of these elections may generally be ascertained without delay. Still the legislature, as we have seen, have adopted the same system in respect to the election of justices for the regular term. Whatever may be the time for holding the annual town meeting, the justice chosen for the full term does not enter upon his office until the commencement of the next year. I do not doubt the legality of this provision for it was a matter of legislative discretion. There was propriety in confining the terms of office to the political year. When, however, the election is to fill a vacancy in that office, the constitution has itself determined the limit of the appointment for the antecedent vacancy, by giving to the person elected the whole residue of the term. This is not at all inconsistent with the powers implied in the fifth section of the tenth article authorizing such appointments to extend to the commencement of the ensuing year. The two provisions, when construed together, as they must be, show that although appointments extending beyond the election may be made in many cases, the office of justice of the peace presents an exception. I am, therefore, of opinion that the provision of the act of 1830, allowing justices elected to fill a vacancy to enter upon the office immediately, was in accordance with the true construction of the constitution, and that if the act of 1849 assumes to take away this right and to allow an executive appointment to be interposed in its place, the provision is a plain violation of that instrument.

Having come to this conclusion upon the question of constitutional power, it is not important to decide whether this case of vacancies in the office of justice of the peace is embraced in the act of 1849. The provision is not limited to state officers, as is shown by the exception of the cases of county judge and surrogate, under certain circumstances. I am inclined to the opinion that the words "annual election," as used both in this act and in the tenth article of the constitution, refer to a state election, and that the "town meetings" are not embraced in it. But however that may be, it is plain to my mind that the office of justice of the peace is not within the enactment. In the cases intended to be provided for, the legislature may, by concurrent resolution, remove the person appointed by the governor, whereupon both houses are to appoint a person in his place. Independently of the consideration that it could not probably have been intended to subject a local officer of this grade to such a mode of appointment under any circumstances, the constitution provides that the removal of justices shall be by such court as shall be prescribed by law. It can only be done upon cause shown and after an opportunity of being heard. (*Art.* 6, § 17). This is a provision intended to secure the independence of this class of judicial officers, and applies as well to justices appointed to fill a vacancy, as to those elected for a full term. The case of a justice of the peace cannot be brought within the scope of the act of 1849, unless the act of 1830, to which reference has been made, is considered as repealed. The provision of the last mentioned act upon the point under consideration, is precise and direct. To hold that it is repealed by the provisions of a general statute, which makes no mention of it, or of the office in question, and which would have an extensive operation without touching this subject, would be contrary to the sound and well-settled doctrine, that repeals of statutes by implication are not allowed, except in cases where the implication is extremely plain. (*Dwarris on Statutes*, 674).

The judgment of the Supreme Court must be reversed, and judgment be rendered for the plaintiff.

JOHNSON, Ch. J., COMSTOCK, PRATT and ROOSEVELT, Js., concurred in this opinion. SELDEN, HARRIS and STRONG, Js., dissented, the latter delivering the following opinion:

STRONG, J. ( dissenting ), after stating the provisions of the constitution and of the act of February 3, 1849, ( *ch.* 28 ), said: Under this act the appointment of the defendant by the Governor was made. It is contended by the plaintiffs' counsel that the legislature could not authorize an appointment in such a case by any other than the local authorities; and section 2 of article 10 of the constitution is referred to in support of the position. That section is as follows: " All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature shall direct. All city, town and village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed as the legislature may direct." That section applies only to elections or appointments for full terms, and not for filling vacancies. This is manifest not merely from the phraseology of the section, which is appropriate only to an election or appointment for a full term, but from the fact that the subject of filling vacancies is provided for by the 5th section above recited. The latter provision would be a mere repetition if section 2 embraced cases of vacancies. Besides, it may perhaps be said that as section

2 does not include officers whose election or appointment is otherwise provided for in the constitution, it does not extend to officers to fill vacancies, the election or appointment of whom is provided for by the 5th section. The last named section imposes no restriction upon the legislative power in regard to the mode in which the vacancy shall be supplied. Regarding the act of 1849 as valid, it conferred full authority upon the governor to appoint for the vacancy, as was done by him, unless there was some other provision of law for filling the same. The counsel for the plaintiffs insists that full provisions for the case is made by section 36 ( 1 *R. S.,* *p.* 348, ) which declares that " vacancies in all town offices, except the office of supervisor, assessor, commissioner of highways, overseer of the poor, collector or overseer of highways shall be supplied by the justices of the town " in the manner provided by a previous section, that is, by three justices of the peace by warrant under their hands and seals. That section relates only to town officers, and unless a justice of the peace is a town officer, it is wholly inapplicable. At the time the section became a law, the offices particularly contemplated by the legislature for its application were doubtless those to which the title, of which the section formed a part, had reference, and which are not expressly excepted. The section is in the title entitled, " of the election and qualification of town officers, and the terms of their offices," which did not include justices of the peace. Justices were then elected at the annual general elections, under provisions in the chapter entitled " Of elections other than for militia and town officers." The mode of filling vacancies in that office was prescribed by sections 8 and 9 of that chapter, which was at the general election next succeeding the happening thereof, and if not then supplied, at a special election to be held. But beyond this consideration as to the offices intended by the legislature by the section in question, the fact that the office of justice of the peace belonged to the class of offices other than mili-

The People *v.* Keeler.

tia and town offices, affords very strong, if not conclusive evidence, that the office was then regarded by the legislature a county, and not a town office. In 1829 a law was passed for the election of justices of the peace at the annual town meetings, as is provided by the present constitution, instead of the general election in the fall, but their election was to be certified, as is the case now, to the clerk of the county, and it was provided, as it is by the present law, that they should enter on their duties on the 1st of January following, as in the case of all officers elected by the people, except to supply vacancies, other than officers of towns. Then, as now, the oath of office was to be taken before the clerk of the county. These provisions as to the commencement of the term of office, and for having the evidence — of who held the office — with the county clerk, indicate that the office has ever since been regarded by the legislature as a county office. Again, justices of the peace are classed among the " public officers of the state other than militia and town officers" in the chapter of the Revised Statutes relating to the election and appointment of such officers, their qualifications and the tenure of their offices. ( 1 *R. S.*, 95.) Added to these evidences is the fact that the jurisdiction of justices for many purposes extends throughout the county where they reside ; and that, even in respect to their residence and the trial of civil suits, a statutory limitation has been supposed by the legislature to be necessary to prevent their residing and exercising that portion of their powers where they might choose in the county. ( 1 *R. S.*, 102, § 12 ; *Guernsey* v. *Lovell*, 9 *Wend.*, 319. ) In judicial proceedings they are usually designated as justices in and for the county, instead of naming the town as their locality. I am therefore satisfied that they are not town officers within the meaning of the section referred to, of the Revised Statutes, for filling vacancies in town offices, and that the section has no application to this case.

It is clear to my mind that the phrase "offices of this state," in the act of 1849, embraces the office of justice of the peace. That language, in its ordinary interpretation, includes local offices under the constitution, those limited to particular localities, as well as offices for the entire state, the powers and duties of which extend throughout the state. And the provision in the act, that nothing contained in it shall authorize the governor to fill a vacancy in the office of county judge and surrogate in certain cases, shows that the words mentioned were used by the legislature in such a sense, All offices under the constitution, are offices of the state, without regard to any other consideration. The office of justice of the peace is also an office filled at an annual election, and the regular term of which commences with the political year next succeeding the election. A town meeting annually is as much an annual election as the general state election held in the fall for the whole state; and no other provision existing by law for filling a vacancy in the office of justice of the peace, there would seem to be no ground for doubt that the law of 1849 is applicable to that office.

The defendant was entitled to hold the office until the end of the year 1856; the act of 1830, so far as it declares that a justice appointed to a vacancy shall forthwith enter upon the duties of the office, being inconsistent with the act of 1849 and therefore repealed by it.

I see no objection under the constitution to the provision in the act of 1849, entitling a person appointed to fill a vacancy in the office of justice of the peace, to hold until the commencement of the political year next succeeding the first annual election at which the vacancy could be filled. Section five of article ten of the constitution, confers express power to provide by law for filling the vacancy for that period. And the exercise of that power is in no respect inconsistent with the provision in section seventeen of article six of the constitution, that "in case of an election to

fill a vacancy occurring before the expiration of the full term," in the office of justice of the peace, "they shall hold for the residue of the unexpired term." Construing the two sections, as should be done, together, the latter provision means the residue of the unexpired term after the commencement of the political year next succeeding the election. It is no answer to this view that the full term may expire at that time; in such a case an election to fill the vacancy would be useless and should not be held. It follows that the judgment should be affirmed.

SELDEN and HARRIS, Js., concurred in this opinion.

Judgment reversed.