## THE PEOPLE OF THE STATE OF NEW YORK ex rel. AUGUSTUS N. WELLER, Plaintiff, v. CHARLES DE KAY TOWNSEND, Defendant.

*Election to fill a vacancy in the office of surrogate—the person elected holds only for the unexpired term of his predecessor— Const., art. 6, sec. 15; art. 10, sec. 5 — chaps. 28, 46 of 1849; chap. 335 of 1867; chap. 859 of 1871.*

At the general election held in November, 1879, Alexander Hagner was elected surrogate of Queens county for the term of six years from January 1, 1880. On the latter day he entered upon the performance of the duties of that office and continued to discharge them until April 7, 1880, when he died. On April 19, 1880, the governor appointed a surrogate to hold the office during the time limited by the Constitution and the laws, who administered the office until January 1, 1881, when the defendant, who had been elected to the office at the general election held in November, 1880, entered on the performance of the duties of the office, and he still continues to discharge them. At the annual election held in November, 1885, the relator was, pursuant to a notice of election issued by the secretary of State, elected to the office of surrogate.

*Held*, that the defendant was elected to fill the residue of the term of six years for which Hagner had been elected, and that his term expired on January 1, 1886, from and after which time the relator was entitled to the office. (Dykman, J., dissenting.)

Submission to the General Term of the question, who, from and after January 1, 1886, was surrogate of Queens county.

*D. O'Brien*, attorney general, and *Winchester Britton*, for the plaintiff.

*John E. Parsons*, for the defendant.

Barnard, P. J.:

Queens county has a population of over 40,000, and the office of surrogate, therein, is filled by a surrogate separately. Alexander Hagner was elected surrogate for six years, from January 1, 1880, and died in April, 1880.

In the fall of 1880, at the general election, Mr. Townsend was elected surrogate. The question presented is whether the election was for a full term of six years or only to fill the residue of the term of Alexander Hagner. At the last general election (1885), Augustus N. Weller was elected surrogate, and Townsend claims that there was no office then to fill. The case of *The People*

*ex rel. Rozenkranz* v. *Carr* (86 N. Y., 512), although in some of its features it resembles this one, has no relevancy. The office of surrogate in the city and county of New York was subject to special laws and to a special constitutional provision in respect thereto, which controlled the case. It was held that the special laws disposed of the argument, but the constitutional term was for six years in the city and county of New York. In this case the question must be met. By the Constitution the term of a county judge and surrogate is fixed at six years from the first of January next after the election of such officers. The legislature have power to provide for filling vacancies in these offices, but not for a longer period than the first of January, after the general election which is held after the happening of the vacancy. The argument for the respondent is that the constitutional term is six years, and that there is no vacancy after the commencement of the political year next after the happening of the vacancy, and that Mr. Townsend was, therefore, elected for six years, from January 1, 1880, and held the office until the end of 1886. The condition of the laws upon the subject is not satisfactory and justifies different conclusions, but I am led to the opinion that the office was vacant on the last day of December, 1885. The constitutional term is six years, but both the Constitution and the laws recognize a vacancy in the office. The legislature is given power to fill it and the limit of the power of withholding the question from the people is fixed. The legislature have passed no law providing for a filling of a vacancy in express terms, but by chapter 859, Laws of 1871, it was provided that when a surrogate was elected to fill a vacancy, that the officer elected " should enter upon the discharge of the duties of the office to which they have been elected immediately upon the receipt of the certificate of such election." Both parties claim under this statute. Mr. Townsend, although he did not enter upon the duties of his office until January 1, 1880, claims that such an entry upon the duties of the office after the election, was only filling a vacancy up to January 1, 1880, when the full term commenced, and that it was within the power of the legislature to increase that six years by the addition of the vacancy in the Hagner term. The construction seems to be a forced one. The system of our State government recognizes two terms of office, one for a full term

and one to fill a vacancy in such term. In some cases it is provided expressly that the election shall be for a full term even if the preceding incumbent had vacated his office before his full term expired. There are other cases where the same express rule is made, that the election shall be for the remainder of the term of the preceding officer. In respect to this office of surrogate the legislature has required that laws shall be passed to fill vacancies. The Laws of 1871, which enacts that those officers who are elected to fill a vacancy shall at once enter upon the duties of the office, is more reasonably based upon a remnant of a term which remained from the old election of Hagner than upon a legislative intent to add the part of the remnant between November and January, 1881. There was a vacancy in the office of surrogate of Queens county in April, 1880. The governor appointed a successor to hold according to law. By the Constitution this appointment could go no longer than 1st of January, 1881. There would then be a vacancy to be filled by popular election, and the legislature had provided that in such cases the newly elected officers should be let in at once after the election, and Mr. Townsend should have done so by right.

My conclusion, therefore, is that the election of Mr. Weller as surrogate was good, and that the term of the respondent expired on the 31st of December 1885. It is the Hagner term which was for the constitutional term of six years, and the portion left after his death is a vacancy in the Hagner term. The office should, therefore, be given to the person who was elected in November by the people.

PRATT, J., concurred.

DYKMAN, J. (dissenting) :

There is a controversy between the parties to this action in relation to the office of surrogate, and it has been submitted to the General Term upon a case containing the following statement, which has the acquiescence of both parties. My conclusion, however, does not coincide with that of my associates, and it is proper for me to assign my reasons for such disagreement :

At the general election in November, 1879, a surrogate was elected for six years from January 1, 1880, who entered on the performance of his official duties on that day and continued in office

until April 7, 1880, when he died. On the 19th day of April, 1880, the governor appointed a surrogate to hold the office during the time limited by the Constitution and the laws. The officer so appointed administered the office until January 1, 1881, when he was succeeded by the defendant Townsend, who was elected in November, 1880, and he has executed the office since his succession thereto.

In November, 1885, the relator Weller was elected surrogate pursuant to the notice of election from the secretary of State, which specified as one of the officers to be elected in Queens county a surrogate in place of the defendant Townsend, and the relator has received a certificate of his election. It is now the claim of the defendant that he was elected for a full term of six years which is yet current, while the relator claims the office on the theory that the defendant was elected for the unexpired term of the deceased incumbent, and as a result that his term of office expired with the year 1885. Such are the substantial and dominating facts from which we are required to produce a surrogate for Queens county. The office is legislative, but the term or boundary of the office is prescribed by the fundamental law. The Constitution, therefore, and the acts of the legislature passed to execute its intention and carry into practical operation its requirements and its provisions, must furnish the rule for the determination of this controversy.

The first appropriate constitutional provision which we must bring to our aid in the solution of the questions presented is this: "The existing County Courts are continued, and the judges thereof in office at the adoption of this article shall hold their offices until the expiration of their respective terms. Their successors shall be chosen by the electors of the counties for the term of six years." * * * "The county judge shall also be surrogate of his county; but in counties having a population exceeding forty thousand the legislature may provide for the election of a separate officer to be surrogate, whose term of office shall be the same as that of county judge." (Sec. 15, art. 6.) The next pertinent portion of the Constitution reads as follows: "The legislature shall provide for filling vacancies in office, and in case of elective officers no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year

next succeeding the first annual election after the happening of the vacancy." (Sec. 5, art. 10.)

This provision of the Constitution did not execute itself, and therefore, in obedience to its direction, a law was passed in 1849, which was amended the same year, and again in 1867 (chaps. 28 and 46 of the Laws of 1849, and chap. 335 of the Laws of 1867), as finally amended and now extant, the statute has these words: "Whenever vacancies shall exist, or shall occur in any of the offices of this State where no provision is now made by law for filling the same, the governor shall appoint some suitable person who may be eligible to the office so vacant, or to become vacant, to execute the duties thereof until the commencement of the political year next succeeding the first annual election after the happening of the vacancy at which such officer could be by law elected." (1867, chap. 335, § 1.)

This statute contains the limitation attached to the appointing power by the organic law, respecting the retention of the office until the beginning of the political year next succeeding the first annual election after the vacancy happens, and under it the appointment was made to fill the vacancy resulting from the death of the first incumbent. That appointment is unchallenged, and its legality may be assumed.

The next statute to be brought into view is chapter 859 of the Laws of 1871, but the only part of it material here is section 5, reading as follows: "The separate officer elected and performing the duties of the office of surrogate and the legal officer discharging the duties of county judge and of surrogate, and elected at the election provided for in this act, shall enter upon their duties on the first day of January next after such election, and shall hold their office for the term of six years from said first day of January; but where such officer shall be elected to fill a vacancy, then they shall enter upon the discharge of the duties of the office to which they have been elected immediately upon the receipt of the certificate of such election." (Chap. 859, Laws of 1871.)

The object of this statute was to provide for the election of certain judicial and other officers, and to fix their terms of office, and such was the specification of its purpose contained in the title. It was not the intention of the legislature to provide in that act a mode

of supplying a vacancy in either of the offices named therein, and it contains no such provision. So, in obedience to the expressed purpose and intention of the legislature, the section already quoted provided that the officer elected surrogate should enter upon his duties on the first day of January after such election and hold his office for the term of six years thereafter. That was the first and great object of the section, and then, in contemplation of an election to fill a vacancy, the time was specified when an officer elected for that purpose should assume his office; but the time for which he should hold the office was not fixed, and has not been prescribed in any way. The only elective term known to the law is the six years' term.

That statute was amended in 1881, by the addition of a section in relation to a vacancy in the office of county judge, by which a vacancy in that office before the expiration of the term must be filled for a full term of six years at the general election, if it ensues not less than three months after such vacancy occurs, and until such election an appointment may be made to fill the vacancy, and the appointee holds until the last day of December. This amendment applies only to the office of county judge, but the same rule may be applied to the office of surrogate, because no statute requires a full unexpired term to be served out before a new term shall commence for a newly elected surrogate. The term of the office is established by the statute for the constitutional period of six years, and no shorter or other term is prescribed, or even mentioned, and it was beyond the competence of the legislature to make it otherwise. That portion of the section quoted has relevancy to this case, and the latter part has not, because the defendant was not elected to fill a vacancy. At the time of his election the office was in possession of a surrogate, in the actual discharge of his functions, who had been legally appointed, as we have seen, and there was no vacancy to fill. The appointment was coextensive with the vacancy which created its necessity, and an office is never vacant while any person is authorized to act in it, and is in possession of it in the discharge of its duties. (*People* v. *Van Horne*, 18 Wend., 518.)

Section 5 of article 10 of the Constitution contemplated and required legislative action which should provide a plan for filling vacancies in office by appointment, and for elective offices specified

a time beyond which such appointee should not hold, and when his term of office should cease and the office be again restored to the control of the electors ; and the law of 1849, with its two amendments, was the response to that requirement.

The Constitution and the statute of 1849, as amended, conferred the power of appointment, which was exercised by the governor in this case, and the plain conclusion is, that such appointee held the office until the commencement of the political year next succeeding the first annual election after his appointment, and no longer. The object of this last limitation was to preserve the elective principle, and to restore the office as soon as practicable to an officer chosen by the electors.

That provision of the Constitution came under the consideration of the Court of Appeals in the case of *The People* v. *Keeler* (17 N. Y., 370), and the opinion of the court contains suggestions which are serviceable here, although the case itself is not an authority. Among other things it is there said : " Nearly all the offices provided for by the Constitution have fixed terms of service. If a vacancy occurs during the term, it is filled (if no particular provision for the particular office is made by the Constitution itself) pursuant to the provision under consideration, but in the case of elective offices an appointment to fill the vacancy is so limited in duration as to preserve as far as practicable the elective principle." * * * " Hence, instead of the nearest possible approximation to the elective theory, the convention adopted that which was practically the nearest, by allowing an appointment to fill a vacancy to extend to the commencement of the next political year after the election. Such an appointment to a State office would still be for the vacancy and would not embrace a longer period. The space of time between the election and the beginning of the next year would be a part of the term of the late incumbent. The appointee would hold to the first day of January succeeding the election, and the person chosen by election would enter into the office on that day."

It is plain, therefore, that the defendant, by virtue of his election, could take no portion of the vacancy, and that is in entire harmony with the latter portion of section 5 of the statute of 1871, an election to fill a vacancy is there contemplated, and such an election

may come.  In this very case if no appointment had been made to satisfy the vacancy, and it had continued down to the time of the defendant's election, then he might have assumed the office under the section on the receipt of his certificate because it was vacant, and that state of facts would present the question now raised by the relator respecting the duration of the defendant's term of office under such circumstances.  But now no such question arises.  The vacancy was supplied by appointment as we have seen and its whole capacity was occupied by the appointee, but as he could hold the office only down to the following January, an election became necessary, and from that necessity grew the election of the defendant.

For what term, then, was he elected?  There was but one term for him, and the Constitution and the statute provided no other, and as he was entitled to one he could take only the one prescribed for him, and that was a full term of six years' duration, commencing on the first day of the political year next succeeding his election. It seems to result as an easy conclusion that the law invested him with the title to the office for the full term of six years.  Why should it be held otherwise in the absence of constitutional or statutory coercion or circumscription ?  Why should it be held that the people receive back the broken and shattered fragments of that official term, when they are the only source from which an entire term can flow ?  They bestowed the office on the deceased incumbent as a trust, and at his death it reverted to them as the source of its emanation.  They possess all political power and supremacy in a plenitude unimpaired and unrestrained except by themselves, and when an office is laid down in any way, or for any cause, they take it as of their first estate.

The Constitution and the laws contain the only limitations upon the power and sovereignty of the people, and in the absence of such restrictions there exists no reason why the freedom of the electors should not be exercised in its unrestrained supremacy. Nothing in reason or utility, and no consideration of public policy, require the expiration of six years from the time the first incumbent assumed his office before the people can again elect for a full term.   Such a rule might require several elections during the period of six years if so many officers should unfortunately die during that time, and thus entail much useless embarrassment, uncertainty and

trouble. When the first incumbent died the office fell in and returned to the people in all its fullness, but the vacancy was supplied by appointment, and they did not assume to fill the office again until the January following, when it was free and open and fell under their unrestricted authority, and was delegated to the defendant.

A comprehensive view discloses no reason why the people could not and did not elect the defendant surrogate for the full term of six years. Take another view: office is a place to be filled by an officer made for a specified time, called a term. The officer takes the title to the office for the length of his term, but his title may be divested by any cause that interrupts the continuity of his incumbency and leaves the place without a tenant. Among such causes is death; the death of the officer terminates his title and ends his term. He is vested with no rights in the office which out-last his life, and the breach caused by his death is called a vacancy, but it is a vacancy in the office and not in the term; that is finished and ended and the successor takes no portion of the term of the deceased incumbent, in any sense, other than taking the place for a part of the time originally included therein. The time for which the successor can hold place is fixed, and that constitutes his term entirely independent of the time or term of his predecessor, and when the limitation of his term is reached he, in his turn, yields the place to his successor.

In application of these views to this case it is to be observed that the term of office of the first named surrogate ended with his death. He possessed no rights in the office which survived him. He assumed the position as a place of personal trust, and all his rights in it expired with him. Then, under the law of 1849 as amended, his successor was appointed and that law prescribed his term of office and fixed its limitation and termination on the first day of the following January. That was the end of his term. Then the defendant came in under an election and took the place by an independent term and for a new term. Both of the former terms here ended and nothing of them was left for him. The case has thus far been examined by the light of the Constitution and the laws, the aid of reason and considerations of public policy. There is but little else that we can bring to our assistance.

The relator has referred to the case of *The People* v. *McKinney*

(41 Barb., 515) as an authority in his favor, and the case does wear some features similar to those found in this, but it was decided on the peculiar phraseology of the statute involved, which required the officer to be elected every three years, and, therefore, furnishes no assistance. What was said in the opinion respecting section 5 of article 10 of the Constitution is in accord with this opinion.

The case of *The People ex rel. Rozenkranz* v. *Carr* (86 N. Y., 512) was a surrogate's case like this, but it involved that office as it existed in New York county, and the court decided that section 15 of article 6 of the Constitution did not measure the term and had no application, but that the office in that county was a local office and wholly under the control of the legislature. If any conclusion can be extracted from the language of the opinion, it will be but an inference after all and the case itself is not an authority.

The provision of the Constitution for the supply of vacancies in office has fallen incidentally under the consideration of the courts in several reported cases, since its adoption, and the foregoing opinion is in full harmony with the views expressed by the judges in all such cases. They are: *The People ex rel. Henderson* v. *Snedeker* (14 N. Y., 52); *Conover* v. *Devlin* (24 Barb., 606); *People* v. *Keeler* (25 id., 23; S. C., 25 id., 422); *The People* v. *Molineux* (53 id., 9), and *The People* v. *Keeler* (17 N. Y., 370.)

My conclusion is, that the defendant was legally and regularly elected surrogate of Queens county at the election in November, 1880, and properly assumed the office on the 1st day of January, 1881, and could not take it sooner; that his term of office was measured and bounded by the Constitution of the State; that the legislature has, not abridged the term of office of the surrogate, and is without the power to change it in any way or to meet any event; and that the defendant was elected for a full constitutional term of six years and must hold the office during that period, and that he should have judgment in his favor on the submission, with costs.

Judgment for Weller, relator, upon the submitted case.