# THE PEOPLE, *ex rel.* Alexander H. Bailey, *vs.* THE SUPERVISORS OF GREENE.

12  217
64h 414

12  217
90h 148

12b 217
31ap446

12b 217
63ad515

To entitle a party to the writ of mandamus, two things must appear; first, that he has a legal right to have something done by the party to whom he seeks to have the writ directed, and which has not been done; and secondly, that he has no specific legal remedy to which he can resort to compel the performance of that duty.

It must also appear that the defendant yet has it in his power to perform the duty required of him.    For the court will refuse the writ if it be manifest that it would be vain and fruitless.

Accordingly, *held,* that after a board of county canvassers has met and organized according to law, and proceeded to estimate the votes of the county,

and to make the statement prescribed by statute, and to determine who have been elected county officers, and a copy of their determination, &c. has been published and filed, and has become a matter of record, and the board has dissolved, a mandamus will not lie requiring them to reorganize, and correct the estimate of the votes of the county, and the several statements and determinations made thereupon by such board, by allowing, counting, canvassing and estimating the votes of a particular election district, which it is alledged were improperly omitted by such board at its former meeting, and commanding them to make corrected statements of the votes, and deliver the same to the county clerk, and to correct, in accordance with such statements, the determinations made by such board as to the person or persons duly elected to any county office.

If the supreme court has the power to interfere, by mandamus, to control the action of a board of canvassers, it can only be done while such board is in existence.

When the board, having performed the office for which it was constituted, has been dissolved, it is incapable of being re-animated. And any act it should attempt to perform, even though done in obedience to a mandamus, would be extra-official and nugatory.

MOTION for a peremptory mandamus. On the 21st of November, 1851, an alternative mandamus was granted, at a special term, directed to Rufus H. King, supervisor of the town of Catskill, George S. Nichols, supervisor of the town of Athens, and to the supervisors of the several other towns in the county of Greene, by name, *reciting* that they, as the board of county canvassers, had illegally and unjustly rejected, in making their canvass, the original statement of the canvass in the third election district of the town of Catskill, and had illegally and unjustly refused to count and canvass the votes of that district, and had therefore made and caused to be recorded, false statements of the results of the election in the county of Greene, and had thereupon unjustly determined, among other things, that Lyman Tremain was duly elected to the office of county judge, to the grievous wrong of the relator, who should have been declared to be elected, and *commanding* them, and each and every of them, " to meet at the office of the clerk of the county of Greene, on the 28th day of November, 1851, at one o'clock P. M. or at an earlier day if they should elect so to do, and then and there to reorganize the said board of county canvassers and

correct the estimate of the votes of said county, and the several statements and determinations made thereupon by the said board, by allowing, counting, canvassing and estimating the votes as contained in the original statements of the canvass in said election district number three, in said town of Catskill, produced to them, and including the same in their estimate of the votes of the county of Greene, and in their statements made thereupon, and that they deliver to the clerk of the county such corrected statements, properly certified and attested, as required by law, to be recorded by him—and that thereupon they correct, in accordance with such corrected statements, the determinations theretofore made by them, the said board, as to the person or persons duly elected to any county office, by the greatest number of votes, or that they show cause to the contrary, before the justices of the supreme court, at the capitol, in the city of Albany, on the first Monday of December, then next, at a general term of the court, then and there to be held, lest complaint should again come," &c. The writ was served by delivering a copy "to each of the supervisors personally, at the town in which he resides, and showing to each the original writ under the seal of the court."

On the return day of the writ, the defendants' counsel, without making a return, objected to the allowance of a peremptory mandamus, upon several grounds, which are sufficiently stated in the opinion of the court.

*K. Miller,* for the relator.

*N. Hill, Jr.* for the defendants.

*By the Court,* HARRIS, J.   By the 30th rule of this court, all non-enumerated motions, except when otherwise directed by law, are to be heard at special term. The alternative mandamus, in this case, ought therefore to have been made returnable at a special term, but as it has been brought here, and no objection has been made, the court, in view of the novelty and

importance of the question it presents, have thought fit to entertain the application.

The first inquiry which presents itself, in the consideration of the case is, whether, assuming the facts to be as stated by the relator, they furnish proper grounds for the interference of the court, by mandamus. The general rule is, that when the subject matter is within its control, this court, as the general guardian of public rights, and in the exercise of its authority to grant the writ, will render it, as far as it can, the means of substantial justice, in every case where there is no other specific legal remedy for a legal right, and will especially provide, as effectually as it can, that all official duties are fulfilled. (*Tapping on Mandamus*, 9. 3 *Black. Com.* 110.) The object of the writ is, not to supersede legal remedies, but to supply the want of them. The only proper ground for its allowance is, that, without it, there would be a defect of justice. Though it issues in the name of the people, it is substantially a civil remedy, granted to the relator. To entitle him to this remedy, two things must appear : first, that he has a legal right to have something done by the party to whom he seeks to have the writ directed, and which has not been done ; and, secondly, that he has no specific legal remedy to which he can resort to compel the performance of this duty.

Guided by these principles, let us examine the case as it is presented upon the face of the alternative mandamus. The board of canvassers illegally and unjustly omitted to count the votes of the third election district of the town of Catskill. The relator had a legal right to have these votes counted ; the board, therefore, omitted to do an act which they ought to have done. There has been an omission to perform an official duty. For this omission the relator ought to have a remedy ; and if no other remedy exists, and the parties to whom the writ is directed can yet perform the duty, he is entitled to a mandamus. If, on the other hand, the defendants can not now perform that duty, even though they have erred in omitting to count the votes in question, the relator must look for some other remedy. A mandamus, if granted, would be unavailing.

The county board of canvassers, except in certain specified

cases, is composed of the supervisors of the several towns in the county. The alternative mandamus assumes that the defendants, being such supervisors, constitute the board. This is not necessarily the case; but I will consider the question upon the assumption that this is so. That board met on the Tuesday following the election, and organized according to law. It then proceeded, though illegally and improperly, as it is alledged, to estimate the votes of the county and to make the statements prescribed by statute. They also proceeded to determine who had been elected county officers. This determination, it may be assumed, was erroneous. But it was made, and a copy, with the statement upon which it was made, has been published. It has been filed, and has become matter of record. The board has dissolved. Were the same individuals again to convene, they would not again constitute the county board of canvassers. No statute authorizes such second assembling, or prescribes its mode of organization. If convened and organized, it would have no legal authority to review its former acts, or correct its errors. When the board deposited with the clerk the result of its canvass, and declared who were elected to office, and published that result and determination, all its powers were expended. If it had erred, the errors must be corrected by some other tribunal. The law has withheld from it the power of reviewing its own determinations

But suppose the supervisors to reassemble and assume the office of recanvassing the votes of the county. They have already determined that Lyman Tremain is elected to the office of county judge. If they should obey the mandamus, they might make a new statement and determination, showing that the relator is elected. The object of granting the writ of mandamus is, as we have seen, to provide an efficacious remedy to the relator, so as to prevent a failure of justice. Of what advantage would such a determination, made under such circumstances, be to the relator? The result would, undoubtedly, be, as now, that both parties would claim to have been elected county judge; both would take the requisite oath of office, and assume its duties, and the controversy then, as now, would only be determined by an action in

the nature of a *quo warranto*. Such a revision of the canvass, therefore, if practicable, would produce no beneficial result, even to the relator himself. Instead of being an efficacious remedy, the writ, in its operation would be wholly abortive. When it can be foreseen that this must be the result, the writ should not be granted. *Lex non cogit ad inutilia.* "The court will refuse the writ," says Tapping, "if it be manifest that it must be vain and fruitless, or can not have a beneficial effect." (*Tapping on Mandamus*, 17.) I am of opinion, therefore, that, assuming that the board of canvassers erred in rejecting the votes of the third election district of the town of Catskill, it is now too late for the canvassers to correct that error. The matter has passed beyond their jurisdiction or control. If the defendants, moved by the command of this court, or otherwise, should undertake such correction, their action would be wholly ineffectual for the purposes for which the relator seeks to enforce it. Nothing short of a *quo warranto* action can determine his right to the office.

I will not say that a state of facts might not occur which would call upon the court to interfere by mandamus to control the action of a board of canvassers, but this can only be done while such board is in existence. And even then, the nature of the duties to be discharged by it is such, that it can rarely be either expedient or practicable thus to interfere. But, when the board, having performed the office for which it was constituted, whether legally or not, has been dissolved, it is incapable of being reanimated. Any act it should attempt to perform, even though it be done in obedience to the mandate of this court, would be extra-official and nugatory.

Nor does the relator need this writ. He has another and a more efficacious remedy. I agree with him, that it is not an answer to the application for a mandamus to show that some other remedy exists against some other party. It would not, of itself, be enough for the defendants to show that the relator can obtain relief by quo warranto against the person whom they have declared to be elected. This principle only prevails when such other remedy is attainable against the same party to whom it is

sought to have the mandamus directed. I prefer to put the refusal to grant the writ upon the ground that it is inappropriate and ineffectual, and that, by withholding it, we do not leave the relator without an appropriate and effectual remedy.

The ancient and appropriate proceeding to try and determine the right and title to all offices, says a very learned judge, was under the writ of *quo warranto :* and where a legal question was involved, this was the only mode of determining it. By the revised statutes, this old remedy is not only preserved, but rendered more expeditious and manageable, and it is declared to be especially applicable, " when any person shall usurp, intrude into, or unlawfully hold or exercise any public office. (2 *R. S.* 581, § 28. *See also Code of* 1851, § 432.) " Provision is made for the determination of issues of law and of fact. The right of trial by jury, so vital to the due decision of the latter, is expressly maintained and declared. This, then, is emphatically the constitutional mode of proceeding for the trial of the title to offices." (*The People* v. *Stevens,* 5 *Hill,* 631, *n. a, per Kent, C. Judge.*)

The motion for a peremptory mandamus must therefore be denied.

