## THE PEOPLE *on rel.* VAN DEMARK *a.* THE COMMISSIONERS OF EXCISE OF SARATOGA COUNTY.

*Supreme Court, Fourth District ; Special Term, July,* 1858.

### EXCISE.—MANDAMUS.

A mandamus should not be issued to direct a Board of Commissioners of Excise under the act of 1857, to grant a license.

A mandamus should not be issued to direct them to entertain the application of the petitioner, after the board have met, and completed the term of ten days limited in the act.

Application for a mandamus.

The petitioner applied for a peremptory mandamus, to be directed to the Commissioners of Excise of Saratoga county, directing them to grant unto Gerardus C. Van Demark a license to sell strong and spirituous liquors and wines, to be drank on his premises,—or, for a like writ to the said commissioners, directing them to entertain the *application* of the said Gerardus C. Van Demark for a license; and, if he is entitled thereto, to grant the same.

*L. B. Pike,* for the motion.

*J. A. Shoudy,* for the commissioners, opposed.

POTTER, J.—The statute entitled "An act to suppress intemperance, and to regulate the sale of intoxicating liquors," passed April 16th, 1857, provides, section one, for the appointment of a board of county officers, who shall be known as the " Board of Commissioners of Excise." The second section requires that this board shall meet in their respective counties, at the place where the county courts are required to be held, on the 3d Tuesday of May in each year, and on such other days as a majority of the commissioners shall appoint, *not exceeding ten days in any one year* (except in the city of New York), *for the purpose of granting licenses,* &c. This section further directs to whom, and what kinds of licenses may be granted, and confers the power upon this board to grant such licenses. By the third

section, they are directed to keep a book of minutes of all their proceedings, in which shall be entered " *every resolution passed by them, granting a license to any person,*" &c., which minutes shall be verified by their signatures, and filed with the town clerk of the town for which such license shall be granted, and in the cities, with the city clerks.   The fourth section directs the licenses to be signed by the commissioners granting the same,— *forbids their issuing, until the requirements fixed by the board shall be complied with,*—fixes the time of their duration, and makes them all expire on one particular day.   Section five authorizes the board to appoint a clerk *for the time they may be actually in session in accordance with the provisions of this act,*—requires another book of minutes in which shall be entered the names of all *applicants* for license, a list of all licenses granted, the names of the parties to whom granted, and the names of the securities to the bond, &c.; and allows to each of the persons composing such Board of Excise, the sum of three dollars per day, for services actually performed.   Section sixth prohibits granting licenses except upon the applicant's complying with certain prescribed terms; *nor unless the commissioners are satisfied that the applicant is of good moral character; that he has sufficient ability to keep an inn, tavern, or hotel, and has the necessary accommodations to entertain travellers; and that an inn, tavern, or hotel is required for the actual accommodation of travellers at the place,* &c.; and in case the commissioners shall grant any license contrary to the provisions of this act, they shall be deemed guilty of a misdemeanor.   The twenty-second section provides that certain penalties in the act shall be sued for and recovered, in the name of the Board of Commissioners of Excise, &c

The provisions above, selected from the act, seem to be all that affect the question presented to me for consideration.   It appears from the papers upon which the motion is made, that the Board of Commissioners put their *refusal* to act in the case in question solely upon the ground, that having already met on the 3d Tuesday of May, 1858, and on nine other days appointed by them, making, in all, ten days of session, in the year 1858, their power to act, for the purpose of granting *licenses* in this year, was at an end; and, for that sole and only reason, they refused to entertain the application of the said Gerardus C.

Van Demark, but giving their consent to entertain the application, if the court should decide they had the power.

It is certainly clear, that if the intent of the statute is to limit the powers of this board to act for only ten days in each year, a license subsequently granted would afford no protection to the applicant. It would be void for want of jurisdiction in the board to grant it. (Palmer *a.* Doney, 2 *Johns. Cas.*, 349 ; Rex *a.* Sainsbury, 4 *Durn. & E.*, 451.) The *object* of this application seems to be, to ascertain what *powers* this board possess, in reference to the question submitted. It is obvious that the Legislature intended by this act to constitute a public body of county officers, having certain *quasi* corporate powers; to have perpetual succession ; to have an official name and character ; and to be endowed with corporate capacity in all the particulars in which power is *expressly* bestowed upon them. And it is a well-established principle of common law, in regard to such bodies, that wherever the act which creates them is silent as to the power conferred, they possess, by necessary implication, all the authority that is requisite or necessary to execute the purposes of their creation ; among which is the incidental power of suing and being sued in regard to all matters pertaining to the duties enjoined by law, or of any omissions of duty by them, in that particular department of the public interests. Any duties, therefore, which they officially owe to the public, or to individuals, may be enforced through the power of the courts, by the same remedies, and with the same effect, as if they were natural persons. But still, they are a jurisdiction created by statute, and are limited to the exercise of the powers only that are *expressly* conferred by the statute creating them, and these powers they cannot enlarge by implication, except as above stated. To grant licenses, it is seen, is one of the powers *expressly* conferred upon this board by the second section of the act; and it is a general rule in the construction of statutes, that when a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered *as directory* merely, and not *mandatory* or *jurisdictional*, unless the nature of the act to be performed, or the language used by the Legislature show, that the designation of time was intended as a limitation of power of the officer. (People *a.* Allen, 6 *Wend.*, 486.) It was argued, that inasmuch

as there are no negative words in this statute prohibitory of the exercise of this power at any season or time of the year, provided the board should so appoint, nor any language declaring their functions as a board suspended during the remainder of the year, like all other public bodies, they still retain the power. This is true, as a general rule, but it will be seen by the terms of this statute, that the *time* given to them in which they may execute the power conferred, is expressly limited in its duration, and the only discretion conferred upon them in that particular, is the selection or appointment of the ten days in which they can so exercise their power. And it will hardly be questioned, as a rule, that when a limited discretion has been once exercised, its *power* is exhausted. These words of limitation are a new feature in this statute; they were never before inserted in the excise law; they must have been inserted to create some change, and must, therefore, be construed to have a significant meaning. The time so limited is doubtless sufficient for the exercise of these duties in any of the counties in the State, except New York (which is excepted). The Legislature may have limited this power only from an apprehension of an abuse of power by this body,—as, that they might become a permanent and an exceedingly expensive one without such a limitation. Be that as it may, it is not our duty to speculate as to the reason. It is sufficient for us that they made such a limitation in the act, and the time so limited has been exhausted by this board. Take, for illustration, a much stronger case than this, that of the "county court." *That* is a tribunal recognized not only by statute, but is created by the constitution itself—a body having perpetual existence, and having certain continuous powers. *That court is* authorized by statute to make *its* own appointments of the days and times when they will hold a court, and exercise their authority. After they have exercised the power of appointment, have made their order for that purpose, and published it, this power, so exercised, becomes itself the law, and is no longer a question of discretion; and would it be pretended by any good lawyer that this county court could meet and exercise jurisdiction, and try causes on any days they chose, other than those appointed? I think not.

I cannot agree with the counsel for the petitioner that the limitation of time, by this act, is *eleven*, instead of ten days.

Neither by a grammatical or common-sense construction of the language of the act does the intent appear, that the number of days shall exceed ten, in any one year. The sentence should be read thus,—" *The Commissioners of Excise shall meet in their respective counties, at the place aforesaid, not exceeding ten days in any one year.*" And the following part of the sentence should be read as if it was included in parenthesis—(" On the third Tuesday of May in each year, and on such other days as the commissioners shall appoint.") It cannot mean ten *other* days besides the third Tuesday of May. I confess that I am not inclined to avoid or to annul the *effect* and the apparent *intent* of statutory provisions by merely calling them *directory*, nor to depart from the legitimate province of the judiciary to perform any of the duties that belong to legislation. In my judgment, " boards of public officers" and " courts" will best perform their respective duties by attempting to execute the legislative will, without regard to their own individual views, and without attacking the policy, wisdom, or justice of legislative enactments. Abuses of the power of the courts less frequently arise from a *strict*, than from too *liberal* and *latitudinarian* construction of statutes. The best and safest rule is, to ascertain the true intent of the Legislature, if it can be found, and to seek for it in the very words of the act itself, and in doing so, to assume that they intended precisely what their language imports. All that I have thus far said, in relation to the powers of the board *still further to act*, is entirely "*obiter dictum*," and has been said only out of respect to the wishes of the Board of Commissioners of Excise, and the petitioner, who desire to be informed by the court *as to the power of the board to act*. It was entirely unnecessary to be said for the purposes of coming at the conclusion to which I have arrived as to my own duty in the case, and as to the decision I must make, of the motion before me.

The application, as has been stated, is for a mandamus to compel this board either to issue a license to the petitioner, or to compel them to entertain the application for one, and to pass upon it. By the well-settled rules of law, this court have not the power to grant this writ, upon either of the alternatives presented. The exercise by this court of the power of mandamus, is only proper in cases where it clearly appears that some *legal right* has been refused or violated, and that there is no other

appropriate legal remedy. This court never exerts its power to control the action of an inferior tribunal, or board of public officers, who are authorized by law to exercise a discretion as to their acts. In the case of The People *a.* The Superior Court of New York (5 *Wend.*, 122), SUTHERLAND, J., said : " It is a well-established principle, and has been frequently exercised and expressly decided by this court, that when a discretion is vested in an inferior tribunal, and that discretion has been exercised, a mandamus will not be granted." The case *Ex parte* Persons (1 *Hill*, 655) was, in its main features, similar to this. That was under the old excise law of the Revised Statutes of 1830, the 3d and 6th sections of which were in substance like the 3d and 6th sections of the present act. The application was to the Commissioners of Excise of the town of Westport, Essex county. There was no question in that case about the fitness of the applicant. He had kept a tavern under regular licenses for several years in Westport village, all of which was known to, and admitted by, the board. The applicant offered the proper bond, but the board refused to enter the *resolution* in their minutes, pursuant to the 3d section of the act, or to grant a license, though they all knew the fact that no tavern was licensed in the village, and admitted that a tavern was absolutely necessary there. The discretion allowed to the board in that act was the same as it is in this. The motion was decided by Judge COWEN, who said : " The 6th section of the act very properly confers upon the board a large *discretion*, the exercise of which, either in granting or refusing a license, cannot be coerced in any way." And he *held*, that the question was always open until the board entered the resolution in their minutes, pursuant to the 3d section of the act. In Giles' Case (2 *Strange R.*, 881), an old English authority, a mandamus was asked to certain justices, to grant a license to keep an ale-house. The court refused it on the ground that the justices had a *discretion* to grant or refuse licenses to whom they pleased.

Still more unjust, unreasonable, and illegal would it be to grant this writ to compel officers to do *more* than the performance of a duty, which the statute demands at their hands, by compelling them to *entertain* the application. True, they did not place their refusal on the ground of the exercise of discretion, but solely on the ground of their *want of power*. They

insisted, however, at the time, that their power had become exhausted; and the court cannot clearly say that they were mistaken. They have spent all the time which the law has prescribed for the performance of their duty, and they have fully discharged it in that respect. They would be entitled to no compensation for such services, even if they had the power to meet and discharge it. They have no right to burden the county with extra expenses—they are not bound to burden themselves. No blame can rest upon them. The applicant was bound to know the law, and attend to *his* interests in the time which the law has equally given to him and to them.

It is quite probable that the case of the petitioner is one of hardship to him, or one of inconvenience to the public. It is possible that this condition may be charged to the form of this law. The structure of modern statutes, and especially those on the subject of excise, create a pressure upon the courts, often difficult and embarrassing. The present law has been, perhaps, as much as any other the subject of reproach; even to the charge of absurdity in its provisions. The duty of the court, however, without regard to these complaints, will be best discharged by the attempt to give it such fair construction, as a whole, and in its several parts, as shall be most consistent with the apparent intent of the Legislature, without reference to the hardships or the inconvenience in particular cases. The security of the citizen is always best promoted by leaving to the constituted bodies of public officers the full power to exercise that proper *discretion* with which the Legislature has invested them.

The motion for mandamus must therefore be denied.