The People, ex rel. Walter E. Smith, Respondent, *v.* Emil Schiellein et al., Appellants.

The designation in the State Constitution (§ 18, art. 6), of the "annual town meeting," as the time when justices of the peace are to be elected, is equivalent to a prohibition against electing them any other time; and, while the legislature may fix the day upon which town meetings may be held, it cannot prohibit the election of justices of the peace at such a meeting, or provide for their election at any other time or place.

Accordingly *held,* that the provisions of the act of 1881, in reference to the election of town officers (§§ 1, 2, chap. 564, Laws of 1881), providing for

Statement of case.

the election, in towns of counties having more than three hundred thousand inhabitants, of justices of the peace at a general election; and the repealing clause (§ 14), so far as it purports to repeal existing provisions of law, regulating the time or manner of election of justices at town meetings were unconstitutional and void; that even if said repealing clause effected a repeal of the former provisions of law regulating the time and manner of electing supervisors and other town officers, it did not operate as a repeal of the act of 1829 (Chap. 356, Laws of 1829), which fixes the time for the election of justices of the peace.

As to whether the legislature has power to authorize the holding of a town meeting on the same day and at the same place with a general election, at the general election, *quære.*

At the general election in 1882, in a town, in the county of K., an election of a justice of the peace was attempted as provided for in said act, no election was had at the town meeting of that year, ballots were cast for such offices at the annual town meeting in April, 1883, the relator receiving a majority; the ballots were regularly returned by the inspectors of election to the town clerk, the board of canvassers however refused to canvass such returns or make their certificate of election. *Held,* that the attempted election at the general election was ineffectual to confer title to said office upon the person receiving a majority of votes, that the election at the town meeting in 1883 was valid and regular and the relator was entitled to demand a canvass, which having been refused he was entitled to a *mandamus* to compel said board to meet and make such canvass; that although said board were required to meet on a particular day, they continued a board of canvassers until their whole duty was performed; and that the relator lost no right by their adjournment without discharging such duty.

A writ of *mandamus* is proper to compel the performance of an official duty, in a case where it has been wholly omitted by the officer charged with the duty and where a right to require the performance exists in the party demanding it, and it is still possible of execution.

*People, ex rel. Van Demark,* v. *Com. of Excise of Saratoga Co.* (7 Abb. Pr. 84), *People* v. *Supervisors* (12 Barb. 217), distinguished.

One of the parties to whom the writ was directed held the office of justice of the peace under the general election for 1882; it was objected that he was improperly joined. *Held,* untenable as he was an acting justice claiming to exercise the functions of the office under lawful authority, and the title to his office was not triable and could not be determined herein.

(Argued January 29, 1884; decided February 26, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made September 10, 1883, which affirmed an order of Special Term granting a writ

**126**     PEOPLE, ex rel. SMITH, *v.* SCHIELLEIN et al.     [Feb.,

Statement of case.

of peremptory *mandamus*, directed to defendants as justices of the peace in the town of New Lots, in the county of Kings, requiring them to meet as the board of canvassers of said town and canvass the ballots cast for justices of the peace at the annual town meeting held in said town in April, 1883.

The said town being in a county having more than three hundred thousand inhabitants, in consequence of the passage of the act chapter 564, Laws of 1881, no election was had for a justice of the peace to fill the place of the one whose term expired on the last day of December of that year. At the general election of that year, in pursuance of said act, ballots were cast for said office, of which defendant, William Watson, received a majority, and was declared elected; he qualified and entered upon the duties of the office. At the annual town meeting, held in said town in April, 1883, ballots were cast for justices of the peace " to fill vacancy," and others to elect a successor the justice whose term expired December 31, 1883. Of the ballots cast " to fill vacancy " the relator received a majority. The inspectors of election duly counted and canvassed said ballots, and returned the same to the town clerk, which returns were filed by him. The said town meeting was held from twelve, noon, until sunset, as prescribed by said act. By resolution of the board of supervisors of said county, passed pursuant to the act of conferring " on boards of supervisors further powers of local legislation" (Chap. 482, Laws of 1875), the justices of the peace of said town are required, as the board of canvassers, to canvass the votes cast at town meetings. Said justices met, as such board of canvassers, on the next day after said town meeting, said Watson acting with them, but they omitted and refused to canvass the votes for justices cast as above stated or to make any certificate thereof, and after performing other duties adjourned without day.

*Jasper W. Gilbert* for appellants.

*Wm. J. Gaynor* for respondent. Section 2 of chapter 564 of the Laws of 1881, which provides that supervisors and justices of the peace in towns to which said act applies, " shall

be elected at the general election next following the town meet-
ing at which they would have been elected if this act had not
been passed," is unconstitutional in so far as it relates to justices
of the peace. (*Ex parte Quackenbush,* 2 Hill, 369 ; *Geraty* v.
*Reid,* 78 N. Y. 64 ; *People* v. *Keeler,* 17 id. 370–3 ; *People*
v. *Bull,* 46 id. 57.)   By law a justice of the peace elected for
a full term (four years) enters upon the duties of his office on
the first day of January next succeeding his election.  (Laws
of 1829, chap. 356, § 3 ; 1 R. S. [7th ed.] 810.)   A justice of
the peace elected to fill a vacancy, or the unexpired portion of
a term, enters upon the duties of his office " forthwith."   (Laws
of 1880, § 1, chap. 290 ; 1 R. S. [7th ed.] 810 ; *People* v.
*Keeler,* 17 N. Y. 370.)   No notice of an annual town meeting
is required, and there is no one to give it.   (Part 1, chap. 11,
title 2, art. 1, § 8 ; 1 R. S. [7th ed.] 810 ; *People ex rel.* v.
*McKinney,* 52 N. Y. 374.)   Where official notice is required
to be given, failure to give it does not deprive the electors of
the right to vote for and fill the office.   (*People, ex rel.* v.
*Cowles,* 13 N. Y. 350–9 ; *People, ex rel.* v. *O'Brien,* 38 id.
193–5 ; *People, ex rel.* v. *Cook,* 8 id. 67 ; Cooley's Const. Lim.
603.)   A town could hold the town meeting any length of time
between sunrise and sunset that the electors might choose.
(5 N. Y. 23–5.)   The validity of the election cannot be passed
upon on this application.   (McCrary on Elec., § 337 ; *People*
v. *Cook,* 8 N. Y. 67–92 ; Laws of 1881, chap. 123.)   The
justices of the peace are required to canvass these votes by the
act or resolution of the board of supervisors of Kings county,
passed January 17, 1878, pursuant to section 26 of the Laws
of 1875.   (R. S., part 1, chap. 6, title 5, arts. 1, 2, §§ 10, 11,
21 ; 1 id. [7th ed.] 391.)   The contention that by the act of
1881 the legislature changed annual town meeting day to gen-
eral election day is without foundation.   (Democracy in
America, De Tocqueville, 59–63 ; Strong's History Flatbush,
49 ; *Ex parte Quackenbush,* 2 Hill, 369.)

RUGER, Ch. J.   Prior to the amendments of the State Con-
stitution in 1826, justices of the peace in the several towns of

the State derived their authority to act as such through appointment, either from the council of appointment, or, as provided in 1822, by the action of the board of supervisors, and the judges of the County Courts, of the respective counties.

In that year the Constitution was amended so that the people were thereby authorized to elect such officers by ballot "at their annual elections." In 1846, the Constitutional provision was so changed by section 18 of article 6 that it read as follows: "The electors of the several towns, shall at their annual town meeting, and in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be four years." Whatever question might have arisen over the construction of the provision, contained in the Constitution of 1826, it seems to us that in view of this explicit language, none can reasonably be made as to the meaning of the existing provision of the Constitution on the subject. It has in plain and unambiguous language determined the time at which, and the agency by whom these officers are to be selected, and has placed the subject, so far as these powers are concerned, beyond the reach of the legislature to alter or disturb. The designation of certain times and agencies necessarily excludes the adoption of any others for the accomplishment of the objects provided for. The selection of these officers at any other time than at an annual town meeting, is just as effectually prohibited by the words of this provision, as is their election by any other persons than those mentioned. The designation of the annual town meeting as the time when they are to be chosen is equivalent to an express prohibition against choosing them at a general or special election, or at a special town meeting.

The institution, known as an annual town meeting, is of great antiquity in our history, and is marked and distinguished, as its name implies, from all other popular assemblages and elections by the subjects which the people are there entitled to consider, discuss and determine. The words "an annual town meeting" are the antithesis of those indicating a general or special election, and must have been used with reference to their well understood character and meaning among the peo-

1884.] PEOPLE, ex rel. SMITH, v. SCHIELLEIN et al. 129

Opinion of the Court, per RUGER, Ch. J.

ple. It is reasonable to suppose that the intention of the framers of the Constitution was to provide for the selection of these officers at a time and place when the attention of the electors should not be disturbed or affected by the considerations of subjects of State or National importance.

It is, however, unnecessary to determine this question, for whatever may have been the reason which induced the adoption of the provision, it is the plain language of the fundamental law which can neither be disregarded in its letter, or spirit by those charged with the duty of applying its provisions.

We think that this question has been determined by the adjudications, not only of this court, but also of the former Supreme Court. Even in construing the meaning of the provision of the Constitution of 1826 it was said by Justice COWEN, "that the language of the clause amending the Constitution withholds power from the legislature to provide for the election of justices of the peace, except at the times of their annual town elections as these shall be fixed by law." (*Ex parte Quackenbush*, 2 Hill, 370.) The reason of this decision applies much more strongly to the present Constitution than it did to the one then under consideration. In the case of *Geraty* v. *Reid* (78 N. Y. 66), it was said in the opinion of Chief Judge CHURCH: "The Constitution of 1846 provided specifically for the election of justices of the peace in the several towns of the State, and hence it was not competent for the legislature to create that office and provide for an election in a different manner, or by any other locality. The implied prohibition is as effectual as if it had been expressed." See also *People* v. *Keeler* (17 N. Y. 370), and *People* v. *Bull* (46 id. 57).

These decisions seem controlling upon the questions presented on this appeal.

By chapter 564 of the Laws of 1881 the legislature attempted to change the time and manner in which the people residing in counties numbering more than 300,000 inhabitants should elect justices of the peace, and enacted these among other provisions; Section 2. "The supervisors and justices of the peace to be elected hereafter in each of said

towns, except in case of vacancy, shall be elected at the general election next following the town meeting at which they would have been elected if this act had not been passed." Section 8. "Town meetings shall continue to be held in said towns as now provided by law for the transaction of such business as is usually done at such meetings, other than the election .of officers."

It would be difficult to invent expressions which would more directly conflict with the language of the constitutional provisions than those used in this act. There is not even plausibility in the claim that this act is merely an attempt to change the day of town meetings, for it not only requires in express language the election of justices of the peace at a general election, but it also impliedly forbids their election at a town meeting.

A construction, which would uphold the constitutionality of this act, would deprive language of its natural significance, and nullify the force of any constitutional provision.

If the legislature had the power to authorize the holding of a town meeting on the same day and at the same place with a general election, it has not by this act attempted to exercise such power, and it is unnecessary now to determine whether such power exists or not.

While the legislature undoubtedly can prescribe and fix the day upon which a town meeting shall be held, it certainly cannot, under the Constitution, prohibit the election of justices of the peace at such a meeting, or provide for their election at any other time or place.

It necessarily follows from these views that such parts of chapter 564 as provide for the election of justices of the peace at a general election, or which forbid their election at a town meeting, and such parts as purport to repeal existing provisions of law regulating the time or manner of holding such election at town meetings are unconstitutional and void.

But a claim is made that a repeal of the provisions of the Revised Statutes, fixing a time for the election of supervisors and other town officers, has operated as a repeal of chapter 356

of the Laws of 1829, which is the only act fixing the time for the election of justices of the peace ; and that the constitutional provision does not, by its unaided force, operate to fix such time and manner.

We think, however, even if it should he held that the repealing clause of chapter 564, Laws of 1881, effected a repeal of the former provisions of law regulating the time and manner of electing supervisors and other town officers, it would not necessarily affect the provisions of chapter 356 of the Laws of 1829, which fixed the time for the election of justices of the peace as of the time and manner prescribed by chapter 11, part 1st of the Revised Statutes, for the election of town officers.

The act of 1829 does not purport to require justices of the peace to be elected at the same time as supervisors and other town officers, but simply provides that they shall be elected at the annual town meetings, which had theretofore been designated as the day upon which such town officers were to be elected.

Granting that the act of 1881 has effectually changed the day for the election of town officers, it does not at all follow that the provisions of the act of 1829, which named the time at which justices of the peace should be elected, have been affected thereby.

The act of 1829 has full operation as designating a day for the election of justices of the peace, although the day for the election of certain other officers has been changed by the act of 1881. In other words, the act of 1829 had the effect of including justices of the peace as among the town officers provided to be elected at a town meeting, by chapter 11 of first part of Revised Statutes and a subsequent statute which provided that all other town officers than justices of the peace should be elected at another time or place, would not affect the provision for the election of justices, but would leave it as an unrepealed portion of the statute.

An attempt to repeal such a provision by an unconstitutional exercise of legislative power would have the same effect as

though no effort had been made to repeal that portion of the statute.

It would follow from these views that the attempted election of a justice of the peace at the general election in 1882 was ineffectual to confer the title to such office upon the person receiving a majority of votes at such election. It also follows that the legitimate time and place for electing such officers was the regular town meeting held for the town in question in April, 1883.

The relator having received a majority of the ballots cast for the office of justice of the peace at such town meeting, regularly held therein, and such ballots having been regularly returned by the inspectors of election of the several election districts of the town, to the town clerk, thereby acquired the right to demand a canvass, and it was the plain legal duty of the acting justices of the town to canvass such returns, and make their certificate of election.

The justices of the peace for the towns in Kings county have been duly constituted a board of canvassers, to determine the result of their town meetings. This duty continues during their respective terms of office, and arises whenever occasion requires its exercise. They are required by law to meet at the office of the town clerk on the day following the town meeting, to perform that duty. It appeared upon the occasion in question that they met at the time and place appointed, but entirely neglected to canvass the votes for the office of justices of the peace.

In this, we think, they omitted a duty which was imperatively enjoined upon them by the statute, and to the benefit of the performance of which the relator was clearly entitled. While they were required to meet for the performance of this duty on a particular day, there is no limit of time mentioned within which the duty must be performed. It would be competent for them to adjourn such meeting, or even if they had adjourned *sine die*, to assemble again and perform an undischarged duty. They continue a board of canvassers until their whole duty is discharged, and by their adjournment, before it was performed,

the relator lost no right, and they, as the board, no power to perform their official duty. There is no reason why they should not be required to return and complete the duty with which they are charged. It would be a reproach to the laws to hold that an election to office by the people could be defeated by the neglect or refusal of the canvassers to perform the official duty of canvassing votes cast at an election.

It is one of the peculiar functions of the writ of mandamus to meet and remedy the evils which would result from such a neglect of official duty. (*People* v. *New York*, 10 Wend. 395.)

While cases may be found, holding that mandamus will not lie to compel the performance of an official duty, to which the party applying for the writ is not legally entitled, or where the time has expired within which the officer is authorized to act, as in *People, ex rel. Van Demark,* v. *Commissioners of Excise of Saratoga Co.* (7 Abb. Pr. 34), or to compel a public officer to take up and act again upon a subject upon which he has already acted, and assumed to discharge his official obligation, as in *People* v. *Supervisors of Greene* (12 Barb. 217), we have found none denying the right to award the writ where a legal right to require the performance of the official duty exists in the party demanding its performance, and it is still possible of execution, in cases where it has been wholly omitted by the officer charged with its performance.

It was said in *People* v. *New York* (*supra,* 398), that " the principle which seems to lie at the foundation of applications for this writ and the use of it is that whenever a legal right exists, the party is entitled to a legal remedy, and when all others fail, the aid of this may be invoked." In other cases it was said that one who has a legal right to the performance of some act by a public officer, and has no other legal remedy for the injury occasioned to him, by a refusal to perform on the part of the officer, he is entitled to a writ of mandamus against such officer. (*People* v. *Hawkins*, 46 N. Y. 10; *People* v. *Supervisors of Greene*, 12 Barb. 217.)

It was held in *People* v. *Supervisors of Chenango County* (8 N. Y. 318), when the supervisors had neglected to perform a duty required of them at their annual meeting, that they might be compelled by mandamus to return and act upon the omitted duty. They cannot by their own neglect nullify a statute imposing official duties upon them.

The consequences of a different doctrine, in a country like this, where the right to administer the duties of government is predicated altogether upon the exercise of the elective franchise by its people, are too serious to permit any doubt to be raised as to the power of the courts to compel the performance of official duties on the part of the officers charged with the duty of canvassing the returns and declaring the result of its elections.

The point raised that Watson, one of the defendants, has been improperly joined with the other justices of the town of New Lots, by reason of his holding under the general election held in the year 1882, is not well founded. Watson is now an acting justice of the peace of that town, claiming to exercise the functions of the office by lawful authority.

It may be that one of the results following the determination of this appeal will be his removal from that office; but that will not be the direct result of our adjudication. The title to his office is not triable in this proceeding, and cannot therefore be here adjudicated. The writ here finds him in the possession of the office, assuming to perform its duties, and is therefore rightfully directed to him among others. (*People* v. *Lane*, 55 N. Y. 217.)

The order appealed from should, therefore, be affirmed, with costs.

All concur.

Order affirmed.