THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES F. McLAUGHLIN, Respondent, *v.* JOSEPH A. AMMENWERTH et al., Constituting the Board of Election Inspectors of the Sixteenth Election District of the Fourth Assembly District of the Borough of Queens, Respondent, and WILLIAM A. DE GROOT, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM A. DE GROOT, Appellant, *v.* THE BOARD OF COUNTY CANVASSERS OF THE COUNTY OF QUEENS et al., Respondents.

Elections — mandamus will lie to compel inspectors to meet and count ballots "protested as marked for identification" which were not counted for any candidate.

The Election Law continues the inspectors of election. in . office for the purpose of proceedings to review their action upon ballots which have been protested or rejected by them as void. It is one of the functions of the writ of mandamus to remedy an evil which would result from the neglect to perform an official duty, and it will lie against inspectors for the purpose of such a review.

Although the court cannot command a recount of ballots already counted by the inspectors, a mandamus will issue to them to meet and count ballots which have been "protested as marked for identification," and which they have not counted for any candidate, and to make true return thereof and correct their statement of the votes cast in their district, and to count the ballots for the candidates whose names appear thereon.

(Argued January 17, 1910; decided January 25, 1910.)

APPEAL in the first above-entitled proceeding from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1909, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant inspectors of election to reconvene and canvass and count certain ballots voted at the last general election which were marked as "protested as marked for identification."

Appeal in the second above-entitled proceeding from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1909, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the defendant board of county canvassers to direct the board of inspectors of the sixteenth election district of the fourth assembly district in the county of Queens to correct the certified statement of the result of the canvass of the vote in said election district cast at the last general election so as to conform to the tally sheets of said vote.

The facts, so far as material, are stated in the opinion.

*Franklin M. Tomlin* for appellant. The order appealed from in effect granted the recount of seventeen ballots marked "Protested as marked for identification" in violation of the express provisions of the Election Law. (*Matter of Hearst v. Woelper,* 183 N. Y. 274; *People ex rel. White v. Alderman,* 157 N. Y. 431; *Matter of Ordway,* 118 App. Div. 386.)

*Leander B. Faber* for respondents. Mandamus was the proper remedy. (*People ex rel. Smith v. Schiellein,* 95 N. Y. 124; *People ex rel. Sturtevant v. Armstrong,* 116 App. Div. 103; *Matter of Stewart,* 155 N. Y. 546; *People ex rel. Bradley v. Shaw,* 133 N. Y. 493.) Public officers can be compelled by the court to perform the duties pertaining to their office. (*People ex rel. Smith v. Schiellein,* 95 N. Y. 124; *People ex rel. Sturtevant v. Armstrong,* 116 App. Div. 103; *Matter of Stewart,* 155 N. Y. 546; *People ex rel. Wooster v. Maher,* 141 N. Y. 330.)

Gray, J. I think that the order granted below was right, which directed a peremptory writ of mandamus to issue, commanding the inspectors of election of the 16th election district, of the 4th assembly district, Queens county, to meet and to count certain 17 ballots, which had been "protested as marked for identification" and which the inspectors had not

counted for any candidate, for the candidates whose names appear thereon for the office of Municipal Court justice of the 4th Municipal Court district, of the borough of Queens, to make a true return thereof and to correct their statement of the votes cast in said district.

If the effect of the proceeding had been to command a recount of ballots, already counted by the inspectors of election, it would be contrary to the law. (*Matter of Hearst* v. *Woelper*, 183 N. Y. 284.) But that was not the case. The question presented upon these records relates to 17 ballots, on which no vote was counted for candidates for justice of the Municipal Court of the city of New York, 4th district, borough of Queens, or for any candidate thereon. By reference to these records, it appears from the tally sheet of ballots cast in this 16th election district that the total number of ballots cast was 361 and that, as to 17 of them, no vote was counted for the office in question. The county clerk's official statement of " Election Returns " shows the same number of ballots, out of the whole number, on which such vote was not counted. By the affidavits, upon which the application for a writ of peremptory mandamus was made, it appeared from the statements of two of the inspectors of election that 17 ballots cast in the said election district were marked " protested as marked for identification " and " were not counted for any candidate whose name appeared thereon." On the hearing had, upon the return to the order to show cause why the application should not be granted, all the inspectors of election " appeared and stated in open court that the 17 ballots were not counted for any candidate, but were returned as protested ballots ". It, further, appeared that these 17 ballots, so marked, were placed with void ballots in an envelope and filed with the county clerk. These facts are recited in the order, which directed the writ of mandamus to issue. That order commanded the inspectors to meet and to open the envelope containing the void and protested ballots and to count the 17 ballots therein, " marked as ' protested as being marked for identification ', and which were not counted at such general

election for any candidate whose name appears thereon, and to canvass and recount the same for the candidates, whose names appear thereon for the office of Municipal Court Justice ", in question. The effect of the order was to require that their " statement and return will show for whom said 17 ballots were cast for the office ".

It is clear enough that no recount has been ordered of ballots, which were once counted, or which were included in any return of votes counted for the office of Municipal Court justice. The Election Law, (Secs. 370, 373 ; 2 Consolidated Laws, 962, 963), requires that all the ballots, which are protested as marked for identification, shall be counted, but must be separately placed in a sealed package, and section 381 provides for a judicial investigation of such ballots, in proceedings taken to obtain the writ of mandamus. As the result of such judicial investigation, any ballot, which the court determines to have been marked for the purpose of identification, is " to be excluded upon a recount of such votes ".

It will not do to say that the court is without power, under the Election Law, to order the counting of these 17 ballots. While the power is expressly granted to order a recount of votes, where ballots are held to have been marked for identification and have been counted, and to exclude votes thereon, the power, necessarily, exists, also, to compel a compliance with the statute that all such ballots shall be counted by the inspectors " as if not so protested ". (Election Law, sec. 370 ; 2 Consolidated Laws, 962.) The law assumes a compliance with its direction by the inspectors of election and makes provision for the judicial investigation and for a recount as to ballots questioned and counted, but held invalidated by the court. If the election officers have failed to perform their duty to count such ballots, a case arises where the court should, and may, compel them to perform such duty. If this were not true, there would result a disfranchisement of such voters. Voters, entitled by law to have their votes counted, would be remediless. It is one of the functions of the writ of mandamus to remedy an evil, which would result from the

neglect to perform an official duty. (*People ex rel. Smith* v. *Schiellein*, 95 N. Y. 124; *Matter of Stewart*, 155 ib. 545.) The Election Law continues the inspectors in office for the purpose of proceedings to review their action upon ballots, which have been protested, or rejected by them as void, and they must be deemed as continued in office for such a proceeding as this.

It is unnecessary to consider the appeal in the proceeding to compel the board of county canvassers to correct the certified statement of the result of the canvass of the vote cast at the late general election. I think the opinion of the Appellate Division sufficiently discusses the question involved in that proceeding.

I advise the affirmance of both orders appealed from.

CULLEN, Ch. J. (dissenting). The record in this case is very meagre, but as well as can be discerned from the affidavits, and also from the terms of the mandamus granted by the court, the facts are as follows: At the general election held on the 2nd of November last, the respondents were the inspectors of election of the 16th election district of the 4th assembly district in the borough of Queens. After the conclusion of the election they canvassed the votes, certified the results of their canvass and filed their certificate required by law in the clerk's office of the county of Queens. Seventeen ballots were protested and, as required by the statute, were so indorsed by the inspectors of election and placed in a sealed envelope, which was also deposited with the clerk of Queens county. On the 5th of November the relator, a candidate for the office of justice of Municipal Court for the 4th district, on affidavits from two of the inspectors and a watcher, that these protested ballots had not been counted for either of the respective candidates, applied to the Special Term of the court for a mandamus directing the inspectors to canvass such ballots and correct their return in accordance with the result of such canvass. On the return day of the application, on November 8th, the two other inspectors appeared before the

1910.] People ex rel. McLaughlin *v.* Ammenwerth. 345

N. Y. Rep.] Dissenting opinion, per Cullen, Ch. J.

court and admitted the fact to be as charged in the affidavit. The appellant De Groot, also a candidate for the office of justice, appeared in opposition. The application was granted, the inspectors directed to canvass the protested ballots and after the canvass correct their returns in conformity with the result of such canvass.

Unquestionably, under the terms of the statute, the inspectors should have counted these ballots for the respective candidates for which they were cast, leaving their validity to be thereafter determined by the court in a special proceeding taken for the purpose. It may be assumed, that acting apparently in good faith, but misunderstanding the law, they as matter of fact did not count these ballots. Granting that this error was committed by the inspectors, the question remains whether there was any power in them, either on their own initiative, or upon the order of the court, to correct the error by changing the result of the canvass as certified by them and filed in the office of the county clerk. That this proceeding is not based on any provision of the Election Law, but on the common-law power of the court to issue a mandamus to public officers to compel the performance of their duty, is conceded by the learned judge who wrote in the Appellate Division, and is entirely clear. And it is also clear that unless the inspectors had the power to change their return without an order of the court the court had no authority to compel such change, for, with a few statutory exceptions a mandamus lies only to compel the performance of a duty which it was incumbent on the officer to perform before the mandamus was granted. Though the decisions are few and the question has not been presented to this court, it is the settled law of the state that after an election return has once been made the same cannot be altered, but the remedy for error or for fraud must be found in quo warranto. The first decision where this was held was *People ex rel. Bailey* v. *Supervisors of Greene* (12 Barb. 217), decided by the General Term of the third district, Judge Ira Harris writing for the court. This decision was universally accepted as a correct statement of the

346 People ex rel. McLaughlin *v.* Ammenwerth. [Jan.,

Dissenting opinion, per Cullen, Ch. J.    [Vol. 197.

law, and no authority can be found to question it. (See, also, *People* v. *Cook*, 8 N. Y. 69.) In 1880 a statute was passed (Ch. 460) authorizing the courts to reconvene boards of canvassers and to compel action. But the application of the statute was limited to boards of county canvassers. No law has ever authorized the correction of the original returns where they are regular on their face. In *People ex rel. Russell* v. *Canvassers of Albany* (46 Hun, 390) the General Term of the third department held the inspectors had no power to file a different return. Judge Landon said (p. 392) : "This change of determination and statement was not within their power or jurisdiction to make, and was wholly invalid as an efficient and legal change of their first determination and statement. The law contemplates that the duties of the inspectors shall, in these respects, be as promptly performed as possible ; for this purpose, among others, that the result may be determined and declared without any bias arising from a knowledge of its effect upon the aggregate result, or from exposure to subsequent influences. *Like the verdict of a jury when once regularly delivered, the jurors themselves cannot overthrow or defeat it.*" In this case the original returns appear to have been regular on their face. No discrepancy appears between the aggregate of the ballots voted, and the number of votes cast for the respective candidates and the number of ballots on which no vote for a candidate for justice was voted. But the learned judge who wrote the opinion below thought that the present case fell within the decision in *People ex rel. Smith* v. *Schiellein* (95 N. Y. 124), in which the town board having refused to make any canvass of the votes for justices of the peace, on the ground that there was no vacancy in the office, was compelled by mandamus to make the canvass. He thought the mandamus was in effect merely to make the inspectors complete an uncompleted canvass. It seems to me very clear that the original canvass made by the board of inspectors was incomplete only in the sense that every erroneous canvass is necessarily incomplete. The board assumed, by the filed declaration of the result of the count, to

1910.]  People ex rel. McLaughlin *v.* Ammenwerth.  347

N. Y. Rep.]      Dissenting opinion, per Cullen, Ch. J.

show a count of all the ballots in the box, and that cannot be said, in any proper sense of the term, to be an incomplete canvass, though faulty and erroneous it may have been.  A little thought, I think, will make this clear.  The original return of the inspectors stated that on 36 ballots no vote for the office of municipal justice appeared.  There was nothing in the statement of the inspectors to establish that the 17 protested ballots were part of these 36.  How can it be told positively, without opening the box, whether this is the fact?  It is an express contradiction of the original official return made by them and it may be that on opening the box there will appear 36 blank ballots in it.  Suppose the inspectors had made affidavit that instead of merely the 17 ballots found in the envelope, the other 19 returned as blank also contained votes for the office of justice, could they be recounted?  Yet, in what respect would the canvass be any more incomplete with reference to the 17 ballots found in the protested envelope than as to the 19 returned to the box?  Suppose the inspectors had sworn in a case of void ballots that those had been counted by them under a mistaken view that the law directed the same disposition of them as of ballots marked for identification, would a mandamus issue to compel them to deduct those ballots from the several candidates?  As I have already said, the original canvass of the inspectors was incomplete only in the sense that every erroneous determination by the board is incomplete, and if it is to be held that such alleged errors can be corrected on the affidavit of inspectors by varying the canvass as originally certified and filed, it will open the door to the greatest danger, and if the court was right in granting the mandamus it can only be on the theory that it was the duty of the inspectors to make a new return without the mandamus.  In answer to my brother Gray I may state that the tally sheet and original return are not in this record at all, but appear in an application for another mandamus made by the appellant subsequently.  If, however, we refer to that record we will see that the return and tally sheet are on their face entirely complete and consistent.

De Groot's application for a mandamus was properly denied below because the effect of it was to compel the inspectors to disobey the mandamus previously granted, which we have already discussed. The relator's remedy was not by this second proceeding, but by appeal from the order made in the first. The action of the court below was, therefore, right.

The order in the first proceeding should be reversed and that in the second affirmed.

HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur with GRAY, J.; CULLEN, Ch. J., reads dissenting opinion as to order granting mandamus, with whom EDWARD T. BARTLETT, J., concurs.

Orders affirmed. ───────── ─