# Case No. 475.

## ANONYMOUS.

### [1 Wash. C. C. 84.][1]

Circuit Court, D. Pennsylvania. April Term, 1804.

STATUTES—EFFECT OF REPEAL —CRIMINAL LAW— PERJURY—ACT DEC. 19, 1803.

1. Indictment for perjury under the bankrupt law of the United States.

2. When a bill of sale is made fraudulently and colourably to the bankrupt, if he swears that the property mentioned in it belongs to him, it is perjury. But, if he swears to such ownership from mistake, resulting from a misconstruction of a paper, it would not be perjury.

---

[1][Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States.]

3. If an offence be created by law, and before prosecution, the law repealed. the offence cannot be punished, unless there is a reservation of jurisdiction over the offence, in the repealing law.

[Cited in U. S. v. Finlay, Case No. 15,099; Tinker v. Van Dyke, Id. 14,058; U. S. v. Barr, Id. 14,527; U. S. v. Van Vliet, 22 Fed. 643.]

[See note at end of case.]

4. Under the act of 19th December, 1803, [2 Stat. 248,] repealing the bankrupt law, [2 Stat. 19,] there is no reservation for such purposes; and it would only be for perjury committed after the repeal of the law, in cases, which, by authority of the repealing act, may be completed, that an indictment could be sustained.

5. Perjury committed in proceedings under the bankrupt law. cannot be prosecuted under the general criminal law of the United States, the 18th section of which applies to perjuries committed in judicial proceedings, whether orally or by deposition.

6. For a perjury under the bankrupt laws, an indictment will not be supported at common law; because, there must not only be a false oath, but it must be taken in some judicial proceedings, in a matter material to the issue.

[7. Cited in Henfield's Case, Case No. 6,360, to the point that there can be no indictment for perjury at common law in the courts of the United States.]

At law. The defendant was indicted for perjury committed before the commissioners of bankrupts, where, being asked, "at what time did you own the brig Abigail, and when did you cease to own her," answered, on oath, "I cannot tell exactly the time; I believe it was at the latter end of 1799 that I first owned her; I ceased to own her, I rather think, in the year 1800." Whereas in truth and in fact, the said defendant never did own the said brig at any time during the year 1799, or before or after. The first count laid the offence against the bankrupt law, and the second against the general criminal law of the United States. On not guilty pleaded, Mr. Rawle for the defendant stated, that he should endeavour to satisfy the court there was no law to support the indictment; and submitted whether this should be done before the jury were sworn, or after, and before a verdict were rendered; or in arrest of judgment, should the verdict be against the defendant.

The court thought it most proper to proceed in the ordinary way, leaving both law and fact to the jury, under the charge of the court; or to a motion in arrest of judgment, should the jury find the defendant guilty.

Byrd Wilson, the secretary to the commissioners, proved, that the question, as stated in the indictment, was asked the defendant, and that he answered it on oath as there stated; that the question was put, and the oath administered, in the presence of the commissioners and by their direction, on the 20th September, 1803. The question and answer were committed to writing by the witness, and was not signed by the defendant. Phineas Daniel proved, that he wished to purchase the brig; and, being an alien, he,

with a view to give her the character and privileges of a vessel owned by a citizen, got the defendant to let the bill of sale be made to him; but that he, Daniel, paid for her, and to give colour to the cover, obtained a power of attorney from the defendant to manage the vessel, and also one charter party to Bristol for one voyage, and afterwards another for ten years. Both this witness and Williams, a partner of defendant, proved that the defendant never claimed or exercised any acts of ownership over the vessel, or made any demand for freights, profits, &c. In fact, the testimony on this point was complete.

There were witnesses examined to discredit Daniel, who said very hard things of his general character and credit, and some contradictions appeared in his testimony. But his evidence respecting the property in the vessel, was strongly corroborated, by Williams, Robert Whittle, and A. Brown; the power of attorney, charter parties, and the accounts kept by defendant.

Mr. Dallas, the district attorney, contended, that the defendant was indictable under the bankrupt law, although it was partially repealed before the prosecution, because the proviso saved from the operation of the repealing clause, all cases where commissions had previously issued; and that unless perjuries committed under such commission could be prosecuted and punished, it would affect the execution of the commission. To prove that the intention of the legislature is to prevail, cited Bac. Abr. 390; [King v. Harris,] 2 Leach. 800. He referred to many other repealing laws in the code of the United States, where savings had been made as to offences previously committed. 3 Laws U. S. 163; 6 Laws U. S. 80, 58, 3, 61 ; 4 Laws U. S. 456; 5 Laws U. S. 126; 3 Laws U. S. 88; 4 Laws U. S. 446. Second. That if this case be not within the proviso, still the repeal does not prevent the prosecution afterwards. The doctrine applies only to cases of treason and felony. 2 Hawk. [P. C.] 87; 1 Hawk. [P. C.] 306; 1 Hale, [P. C.] 291, 525; 2 Hale, [P. C.] 190. Third. Defendant, if not indictable under the bankrupt law, may be under the general criminal law; for in this case, the false oath was taken in a deposition taken under the authority of the United States, as expressed in the ——— section of that law. Fourth. If not indictable under either of those laws, he may be convicted at common law, though indicted contra formam statuti, (1 Hale, [P. C.] 525,) if the court should think the common law obligatory in the courts of the United States. He contended, under the first head, that the execution of the commission would not be completed as long as any thing might remain to be done, and this might happen in a variety of cases, even after certificate granted, as if an estate should afterwards vest in remainder, or descend to the bankrupt, &c.,

&c. Under the third head, that the general criminal law was not repealed by the bankrupt law, as to perjury; because not inconsistent with it. cited 1 Hale, [P. C.] 705; [Rex v. Wardroper,] 4 Burrows, 2026; [King v. Bass,] 1 Leach, 252; 1 Hawk. [P. C.] 306; [King v. Woodcock,] 1 Leach, 501.

Mr. Dickerson and Mr. Rawle, after arguing the matter of fact to the jury, addressed the court and jury on the law. They contended, first, that the false swearing must be material to the issue. 4 Bl. Comm. 136; 1 Hawk. [P. C.] 331; [Sharp's Case,] Cro. Car. 352; [Lane's Case,] Cro. Eliz. 148. It must be given with deliberation. [Rex. v. Dummer,] 1 Salk. 374. So. too, if he swears under a false impresssion respecting the construction of a paper, or of his title, it is not perjury. [Rex v. Crespigny,] 1 Esp. 281. Now, in this case, the interrogatory and answer only applied to the time of his owning and parting with the vessel, which was entirely immaterial. The answer was made here immediately; the question was put without the defendant's taking time, and as the legal title was, by the bill of sale, in defendant, he might have naturally supposed that it made him the owner, particularly as the notes given for the vessel, were either signed or endorsed by defendant. As to evidence, there must, to convict in perjury, be one credible witness, and strong evidence besides, sufficient in the minds of the jury to establish the guilt. [Queen v. Muscot,] 10 Mod. 195. Daniel, the only positive witness, is not to be credited. Where a statute creates a new offence, and fixes the punishment, the prosecution must be against that statute. [Rex v. Dixon,] 10 Mod. 335; [Castle's Case,] Cro. Jac. 644; [Rex v. Sparks,] 3 Mod. 79; [Anon.,] 2 Ld. Raym. 991; [Rex v. Wright,] 1 Burrows, 543; [Rex v. Wardroper,] 4 Burrows, 2026; [Rex v. Jackson,] Cowp. 297; [King v. Bass,] 1 Leach, 252. The punishment being different under the bankrupt law from what it is under the general criminal law, and not cumulative, the defendant cannot be indicted under the latter—disqualification, under the general law, is to be part of the punishment. In other cases, it is not part of the sentence. [Rex v. Greepe,] 2 Salk. 513. Many parts of the laws of the United States referred to, showing the punishment of perjury in certain cases. 4 Laws U. S. 427, 102; 3 Laws U. S. 337; 2 Laws U. S. 21, 157, 193; 6 Laws U. S. 27.

The repeal of a law creating an offence, whether it be felony or misdemeanor, sweeps away all prosecutions against it, without a saving for the purpose. [Miller's Case,] 1 W. Bl. 451; 1 Hale, [P. C.] 309, 291. Instances where such savings have been introduced, 4 Laws U. S. 446, 523, 541, 202. So similar saving in the statute 6 Edw. VI. c. 12. As to the common law, Mr. Dickerson denied its validity in the United States courts, but his colleague, Mr. Rawle, admitted it.

[Before WASHINGTON, Circuit Justice, and PETERS, District Judge.]

WASHINGTON, Circuit Justice, charged the jury. As it is the opinion of the court, that the law is in favour of the defendant, I shall spare the jury and myself the trouble of going through the evidence. If, in the opinion of the jury, it is insufficient to establish the fact against the defendant, I would not wish to disturb that opinion; if it has a different operation, I shall not press it against him. But I must notice one of the observations made by Mr. Dickerson, lest those who heard it might suppose it had received the countenance of this court; and it is this, that the defendant, having a bill of sale for the brig, might. under the circumstances of the case, have taken an oath that he was owner of her, without committing perjury. It is true, that where a mistake is shown to be the result of a misconstruction of a paper, it is not perjury; but no such misconstruction could take place in a case like this. The oath must be considered in reference to the subject and occasion of it. It was taken for the purpose of disclosing the property and effects belonging to the bankrupt. The defendant, if Daniel's evidence is believed, was a mere nominal owner, made so with his own consent, and with a view, understood by him, to cover Daniel's property under his name. In no sense of the word could he suppose that he owned, or had a property in the vessel. Such a doctrine would defeat the important provisions of our navigation law, if a citizen might cover the property of aliens, and yet safely swear that he was the owner.

Every offence for which a man is indicted. must be laid against some law, and it must be shown to come within it. Such law may be the general unwritten or common law, or the statute law. The offence must not only come within the terms of such law, but the law itself must, at the time, be subsisting. It is a clear rule, that if a statute create an offence, and is then repealed, no prosecution can be instituted for any offence committed against the statute, previous to its repeal. The end of punishment is not only to correct the offender, but to deter others from committing like offences. But, if the legislature has ceased to consider the act in the light of an offence, those purposes are no longer to be answered, and punishment is then unnecessary. Perjury is said to be malum in se. False oaths of all kinds are prohibited by the divine law; but civil institutions punish them only in certain cases, and upon reasons of policy. A false oath taken before the commissioners of bankruptcy, was declared to be perjury, and subjected the offender to punishment; but, the moment the law was repealed, it

remained a false oath, but ceased to be an offence punishable by municipal law. There are many offences that are mala in se, which are not prohibited by human laws; and, therefore, if in any case they should, by such laws, be deemed criminal and made punishable, the repeal of those laws places the acts committed under them, upon the same ground as they were before the laws passed.

As to civil rights, the rule is, that rights acquired under, or barred by an existing law, are not defeated by the repeal of the law. In short, the cases which were cited at the bar, and the language which the legislature of the United States has used in the cases cited, when it has intended to except out of the operation of the repealing law, prosecution for offences committed before the repeal, are conclusive to show that the above doctrine is not to be shaken.

The next question is, to what extent was the bankrupt law repealed by the act of the 19th of December, 1803? [2 Stat. 248.] Until we come to the proviso, it is a general and absolute repeal. Had it stopped here, what would have been the consequence? That all commissions then proceeded in, to various points of their execution, must have been arrested, and infinite mischief have been produced. A proviso is always intended to limit the generality of the enacting clause, or to save or except certain cases out of its operation. If the proviso be ambiguous, its explanation may best be obtained by understanding the scope of the enacting clause, and discovering the mischief to be remedied. Now, here the mischief would have been what I have stated, and the proviso applies precisely to, and remedies it. It declares, that "the repeal shall in no wise affect the execution of any commission of bankruptcy, which may have been issued prior to the passing of this act, but every such commission shall be proceeded in, and fully executed, as if this act had not been passed." The commissions then are still to go until finally executed. But what has the punishment of a perjury previously committed, to do with the progress of such a commission to its final execution? I have no doubt, though it is not now necessary to decide the point, that even in the defendant's commission, though he has obtained a certificate, yet if it be not to be considered as finally executed; and in all other commissions not so executed, should perjury be committed after the repeal, it may be punished; because if otherwise, it would affect the final execution. The difference is this: in the construction which I give to the proviso, I give it a prospective operation; that contended for by the attorney, gives it a retrospective operation, a construction not favoured in civil, much less in criminal cases. In the cases of future perjury, the not punishing them would affect the execution of the commission, but not so as to perjuries previously committed.

Upon the whole, if the legislature intended to except from the operation of the repealing clause all cases where commissions had previously issued, it was easy to have expressed such intention generally, and not confine the proviso to the execution of commissions; and in every instance where they did intend to leave open to prosecution, offences committed before the repeal, they have declared it in plain unambiguous terms.

If, then, the indictment cannot be supported upon the first count against the bankrupt law, can it be sustained upon the second, as against the general criminal law of the United States? If the case could be brought clearly within the 18th section of this law, no doubt that the indictment might be supported. But this section plainly refers to perjuries committed in judicial proceedings, whether orally, or by deposition. The words relied upon by the attorney cannot, I think, be construed to extend the crime of perjury to all cases of depositions taken under the authority of the United States, because that would be to make the same false oath perjury, and punishable if put into the form of a deposition, which would be dispunishable if given orally. This would be a great absurdity; but, if it be construed to extend to depositions taken in judicial proceedings, then the consequence will be, that false oaths taken in judicial proceedings, whether orally or by deposition, when taken under the authority of the United States, are declared to be perjury. Besides, if the construction contended for be correct, the many laws declaring what should be perjury in particular cases, would have been unnecessary. And what is conclusive upon this point is, that, admitting the construction, the defendant has not committed this perjury in any deposition; for the answer taken down by the secretary in this case, though committed by him to writing, cannot be called a deposition. But if the defendant can be indicted under the general law now, he might have been before the repeal of the bankrupt law—if so, he might upon conviction have been punished with fine, imprisonment, and pillory; although under the bankrupt law, the punishment was confined to imprisonment only, which proves either that false oaths, taken in judicial proceedings, are not made punishable by the law in question; or if they were, that the law quoad oaths, taken before commissioners of bankruptcy, was repealed by that law; for otherwise the legislative declaration of what should be the punishment in such a case, would be defeated by the prior law, and the act of the public officer in preferring to indict under it. A bankrupt, though deprived of every thing, and therefore excused from paying a fine under the bankrupt law, might be fined to the amount of 800 dollars under the general law. This cannot be contended for. If then the defendant could not have been indicted under the general law, had the bankrupt law been still in force, to say that

he can be so indicted after the repeal, would be to place him in a worse situation by the repeal than he was before it, whereas the effect of the repeal was to excuse, or rather to render him dispunishable for this offence

If he cannot be indicted under either of those laws, can the common law be pressed into the service? I think not; and for the same reasons I have assigned why he cannot be indicted under the general criminal law. First. Because the common law description of perjury is, a false oath taken in some judicial proceeding in a matter material to the issue, and the punishment is fine and imprisonment. In this case the offence does not answer the description, and the punishment is different.

The jury found the defendant not guilty.

[NOTE. Rev. St. U. S. § 13, (Act Feb. 25, 1871,) provides that "the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall expressly so provide." In U. S. v. Ulrici, Case No. 16,594, this section was held to apply to indictments for criminal offenses.]