THE BOARD OF TRUSTEES OF THE ILLINOIS AND MICHIGAN CANAL et al., Appellants, *v.* THE CITY OF CHICAGO, Appellees.

APPEAL FROM COOK CIRCUIT COURT.

If two statutes are clearly repugnant to each other, the one last enacted operates as a repeal of the former.

Where a statute is repealed, it must be considered, except as to transactions passed and closed, as if it had never existed.

The repeal of a statute conferring jurisdiction takes away all right to proceed under the repealed statute, even in suits pending at the time of the repeal, unless they are saved by a clause in the repealing statute.

A subsequent statute, revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former.

THIS was a proceeding on the part of the city of Chicago, commenced by petition to the circuit court, for the appointment of three commissioners to examine and report upon the necessity of condemning and appropriating to said city, so much of blocks one, two, three, four, five, six, and seven, in the original town of Chicago, as may be necessary to open a street, eighty feet wide, commencing, &c., extending, &c. This proceeding was commenced in 1849. In 1851, the legislature, during the pendency of these proceedings, changed and consolidated the laws incorporating the city of Chicago.

In February, 1853, the Circuit Court of Cook county affirmed the report of the commissioners, recommending the opening of the street in question, and ordered a condemnation of the land for that purpose. Whereupon an appeal was prayed for and allowed.

Objection was taken in the circuit court that proceedings had not been taken under the new, or amended, city charter.

J. N. ARNOLD and T. HOYNE, for appellants.

A. VOSS, for appellee.

TREAT, C. J.   It was provided by an amendment to the charter of the city of Chicago, passed in 1847, that when the common council should desire to appropriate land for the use of a street, they should present a petition for the purpose to some court of record in Cook county, or judge thereof, in vacation; that the court, or judge, should thereupon appoint three commissioners, to inquire into the necessity of the appropriation, and ascertain the compensation to be paid to the owners of the land, and assess the cost of the improvement upon the real estate to be benefited thereby; and that the court or judge might approve the report of the commissioners, and condemn the land embraced by the street.   Under this provision, the corporation, in February, 1849, presented a petition to the Cook county court, representing that it had located a certain street, and desired to appropriate the land over which it passed; and praying for the appointment of commissioners, and the condemnation of the land.   Commissioners were appointed accordingly; and an order was made in May, 1849, approving their report, and condemning the land.   A writ of error was then sued out of this court; and at the June term, 1851, the order was reversed, and the cause remanded.

The "Act to reduce the law incorporating the city of Chicago, and the several acts amendatory thereof, into one act, and amend the same," approved February 14th, 1851, provided, that whenever the common council should lay out a street, they should, after giving ten days' notice of their intention to appropriate the land necessary for the same, choose, by ballot, three commissioners, to ascertain the compensation to be paid to the owners of the land, and assess the cost of the improvement on the real estate to be benefited thereby; and that the common council might approve the report of the commissioners, and then proceed to have the street opened.

In October, 1851, the court made a new appointment of commissioners.   They made a report to the court in August, 1852; and an order was entered in February, 1853, approving of their proceedings, and condemning the land for the purposes of the street.   An appeal was taken from the order.

The application of a few plain principles of law will dispose of this case.   If two statutes are clearly repugnant to each other, the one last enacted operates as a repeal of the former.   Dwarris on Statutes, 673; The King v. The Justices of Middlesex, 2 Barn. & Adolph. 818; Bowen v. Lease, 5 Hill, 221; McQuilkin v. Doe, 8 Blackf. 581; Commercial Bank v. Chambers, 8 Smedes & Marsh. 9.   Where a statute is repealed, it must be considered, except as to transactions passed and

closed, as if it had never existed. Dwarris on Statutes, 676; Kay *v.* Goodwin, 6 Bing. 581; Surtees *v.* Ellison, 9 Barn. & Cress. 750; McQuilkin *v.* Doe, 8 Blackf. 581. The repeal of a statute conferring jurisdiction, takes away all right to proceed under the repealed statute, even in suits pending at the time of the repeal, unless they are saved by a clause in the repealing statute. Miller's Case, 1 W. Blacks. 451; Butler *v.* Palmer, 1 Hill, 324; Springfield *v.* Overseers of Highways, 6 Pick. 501; Matter of road in Hatfield township, 4 Yeates, 392; Hunt *v.* Jennings, 5 Blackf. 195; Commonwealth *v.* Beatty, 1 Watts, 382; Fenelon and Master's Petition, 7 Barr, 173. A subsequent statute, revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former. Bartlett *v.* King, 12 Mass. 537; Towle *v.* Manett, 3 Greenleaf, 22; Nickols *v.* Squire, 5 Pick. 168; Pulaski County *v.* Downer, 5 English, 588.

The mode of appropriating land for the purposes of a street, and assessing the cost of the improvement upon the property to be benefited thereby, was essentially changed by the act of 1851. By that act, the common council appoint commissioners to ascertain the compensation to be paid to the owners of the land taken, and assess the cost of opening the street upon the adjoining property; and the commissioners report their proceedings for the action of the common council. By the act of 1847, the court appointed the commissioners, and reviewed their proceedings. The proceeding under the act of 1847 was before the court; under the act of 1851, it is before the common council. The first act vested the jurisdiction in the court; the last act vests it in the common council. In this respect, the two acts are plainly repugnant to each other; and the last, by necessary implication, operates as a repeal *pro tanto* of the former. The mode of proceeding prescribed by the first act, being inconsistent with the one provided by the last, was thereby annulled and superseded. The jurisdiction of the court was taken away, and transferred to the common council. The power of the court wholly ceased upon the passage of the last act; and the proceedings then pending before it were necessarily arrested. They must be commenced *de novo* before the common council, and conducted under the provisions of the act of 1851. This act professes to regulate the whole subject of the city charter, and it operates as a repeal of all former acts on the same subject, so far as it differs from them. It is evident that but one mode of proceeding was contemplated; and that the one prescribed by the last act was intended as a substitute

for the former. When the last act was passed, the proceedings were incomplete. The case was then pending in this court on writ of error; and it resulted in a reversal of all the orders made by the court below. The reversal left nothing before that court but the petition of the common council. The jurisdiction of the court having in the mean time been withdrawn, it had no power to proceed with the case. Its only duty was to dismiss it. The subsequent proceedings were, therefore, unauthorized and invalid. The case of the North Canal Street Road, 10 Watts, 351, is directly in point. The quarter sessions had confirmed a report of viewers in favor of establishing the road; but between the making and confirmation of the report, the jurisdiction over the subject-matter was conferred on the city council. The court said of the case: " Acts entirely done under a statute while it was in force, stand good after its repeal. But before these proceedings were completed, the statutory jurisdiction of the quarter sessions had been transferred to the council of the city, by the 1?th section of the act of incorporation; and by the transfer, every thing done was made void. The sessions, therefore, ought to have arrested the proceeding."

It is insisted, however, that this proceeding was saved by § 13, ch. 12, of the act of 1851. That section is as follows: " All actions, rights, fines, penalties, and forfeitures, in suit, or otherwise, which have accrued under the several acts consolidated herein, shall be vested in and prosecuted by the corporation hereby created." This provision does not apply to proceedings of this character. It simply vests all rights and causes of action, belonging to the city under prior laws, in the corporation as created and organized by this act. Such is the full scope and effect of the provision. It does not prescribe any mode of asserting those rights. · They are to be enforced under the provisions of this act, where it provides a different mode of proceeding.

The proceedings had in the court below must be reversed.

*Judgment reversed.*