(No. 16695.—Reversed and remanded.)
J. PEISNER et al. Appellants, vs. THE CITY OF CHICAGO et al. Appellees.

*Opinion filed June 18, 1925—Rehearing denied October 9, 1925.*

1. ORDINANCES—*Chicago junk ordinance of 1920 was repealed by salvage ordinance of 1924.* The Chicago ordinance of February 18, 1920, in relation to keepers of junk stores and junk yards, was repealed by the ordinance of March 28, 1924, regarding dealers in the reclamation and salvaging of waste material, as the provisions of the latter ordinance are repugnant to those of the former and constitute a revision of the whole subject; but the repeal of the later ordinance by a special repealing ordinance in November, 1924, did not operate to revive the earlier ordinance on the subject.

2. SAME—*earlier ordinance is not revived by repeal of repealing ordinance—saving clause.* The rule of the common law that where one statute is repealed by another the repeal of the repealing statute revives the statute repealed does not apply to municipal ordinances, as such construction is contrary to both the constitution and the statute, and there is no statute saving rights accruing under a municipal ordinance which has been repealed by a later ordinance having no clause saving such rights.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

RUDOLPH FRANKENSTEIN, (MAXWELL N. ANDALMAN, of counsel,) for appellants.

FRANCIS X. BUSCH, Corporation Counsel, (LEON HORNSTEIN, and RUTH C. NELSON, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The appellants, who are a number of junk dealers in the city of Chicago and who sue in behalf of all similarly situated as well as themselves, filed a bill against the city, its mayor and corporation counsel, to enjoin the enforcement against them of an ordinance which the bill alleged to be unconstitutional and to have been repealed, and to enjoin

the prosecution of four hundred suits begun by the city to recover penalties for violation of the ordinance. The bill was twice amended, a demurrer was sustained to the second amended bill, and the complainants having elected to stand by their bill, it was dismissed by the court for want of equity, and the complainants appealed.

It appears from the bill that the city council passed an ordinance on February 18, 1920, which appears in the municipal code of 1922 as article 3 of chapter 70, headed "Keepers of junk stores and junk yards." This article consists of fourteen sections, numbered 3511 to 3524, inclusive, and provides for the issuing of licenses to keep junk stores or junk yards and to operate junk wagons or junk boats. Section 3511 defines the terms "junk," "junk store," "junk yard," "junk wagon," "junk boat," "junk dealer," "retail junk dealer," "wholesale junk dealer." Sections 3512-13-14 provide for the manner of applying for and issuing licenses and the fee to be paid therefor. Section 3515 prohibits the carrying on of the business of keeping a junk store or junk yard without having a license and the doing of certain acts in connection with the business, under penalties of a fine of from $10 to $200 for each offense. The remaining sections consist of regulations of the place and manner of conducting the business, prohibit junk dealers from receiving any license to carry on the business of a pawnbroker or receiving any article by way of pledge or pawn or loaning or advancing money on the security of any article or thing; provide for the inspection of the places of business and all the junk of every junk dealer, and impose penalties for a failure to comply with the provisions of the ordinance in respect to the conduct of the business. This ordinance is alleged to be unconstitutional as a whole, because it is claimed that it deprives persons of their constitutional right to engage in the business of junk dealers, deprives them of their liberty of possessing, using and enjoying their property and of contracting in regard to it, and subjects them

to unlawful and unreasonable searches.    These constitu-
tional questions arise upon the record, but if the ordinance
in question has been repealed it is not necessary to decide
the constitutional questions.

The appellants claim that the ordinance was repealed by
a subsequent ordinance revising the subject of the ordinance
of February 18, 1920, which was passed on March 28, 1924.
This ordinance did not expressly repeal the previous ordi-
nance.    It was entitled, "An ordinance providing for the
regulation and licensing of dealers engaged in the reclama-
tion and salvaging of waste material," and purported on its
face to amend chapter 70 of the Chicago municipal code
of 1922 by inserting therein after section 3524, article 3-A,
consisting of eleven sections, 3524A to 3524K, inclusive,
headed, "Dealers engaged in the reclamation and salvaging
of waste materials."    Section 3524A prohibits the establish-
ment, maintenance or operation of any yard, building or
other place of business for the purpose of keeping or sell-
ing or for buying or exchanging, bartering in or engaging
in the reclamation or salvaging of any waste materials or
waste commodities classified and known as rags, rope, iron
chain and other things constituting the definition of "junk"
as defined in section 3511, without first having obtained a
license so to do.    Section 3524B defines wholesale dealers
in waste materials and retail dealers in waste materials, such
materials being the same as are defined as junk in the first
ordinance.    Sections 3524C and 3524D provide for the ap-
plication for an issue of license.    Section 3524E prescribes
the annual fee for licenses, of $250 for a retail dealer and
$300 for a wholesale dealer.    Section 3524F provides for
the location of places of business for the purpose of engag-
ing in the business of wholesale or retail dealers of waste
materials, prohibiting such location within four hundred feet
of a church, hospital or school, or in any block on which
two-thirds of the buildings on both sides of the street are
used exclusively for residence purposes or residences and

wholesale or retail store purposes, or used exclusively for wholesale or retail store purposes, without the written consent of a majority of the property owners on both sides of the street. This section contains other regulations in regard to the construction and location of buildings to be used for the purpose of reclamation and salvaging of waste materials. The remaining sections contain provisions regulating the conduct of persons engaged in the business and penalties for the violation of them.

This ordinance purports merely to amend the previous ordinance by the addition of further sections, but the effect of the added sections is to so modify the previous ordinance as to constitute an entire revision of the whole subject of junk and junk dealers. While the ordinance purports to deal with the subject of keeping or offering for sale, or selling, buying or exchanging, trading in, bartering in or engaging in the reclamation or salvaging of waste materials or waste commodities, these waste materials or waste commodities are specified by name as the same commodities which are defined in the previous ordinance as "junk," of which the buying, selling, bartering, exchanging, collecting, receiving or holding in possession for sale constitutes the person so doing a junk dealer under the terms of the previous ordinance.

Counsel for the appellees say in their brief: "The truth is, (and this fact is shown by a glance at the ordinance itself,) the reclamation and salvaging ordinance was drafted to tickle the vanity of those aristocrats of the junk business who disliked such a commonplace appellation as 'junk dealer.' It was manifestly designed to apply particularly to those who were engaged in the reclamation of the materials bought and sold rather than to those who gathered it. An ordinance was drafted which distinguished their business from a junk dealer's business by wiping out the 'old' rope, 'old' iron, and changing a few other things, charging them a higher license fee, and allowing them to pose as

'salvagers and reclaimers,' graduates from the junk business, and this ordinance was specifically and by express terms added to the junk dealers' ordinance, and it was never intended to replace the junk dealers' ordinance." It may be that these were the motives which influenced the city council in passing the ordinance, but we have no way of knowing the intention except from the language used. One who deals in junk is a junk dealer.

The ordinance makes no attempt at classification. It applies equally to all persons engaged in the junk business and in its provisions is so repugnant to the previous ordinance that it is impossible for both to stand. The definitions are repugnant. The definition of "retail junk dealer" in the first ordinance is based upon the amount involved in the separate transactions and limits the term to those whose separate transactions consist of small quantities or those who purchase from junk peddlers, while the term "wholesale junk dealers" includes only those persons whose separate transactions consist of large quantities or who purchase from retail junk dealers or in car-load lots. "Retail dealers" under the second ordinance are defined as those who deal in less than standard car-load lots, and "wholesale dealers" are those dealing in standard car-load lots or greater quantities. The provisions of the two ordinances in regard to the application for and method of issue of the license are repugnant. Under the first ordinance the application is required to be made in writing, setting forth the purpose of the applicant to conduct a junk business, and upon producing to the mayor satisfactory evidence of reputable standing the mayor may grant the license. The provision in the later ordinance is much more stringent. The application must be made to the city collector, and the commissioner of health is authorized to make such investigation as in his judgment is necessary for the purpose of determining whether or not the premises proposed to be used in the business comply with the city ordinance regulating

health, safety and sanitation so as to properly safeguard the health of the employees engaged in the business, and if he finds that the premises proposed to be used do not comply with the ordinance, he is required to report that fact in writing to the mayor, who may, in his discretion, refuse to issue a license; and the commissioner of health is further authorized to investigate as often as in his judgment is necessary after the issuing of a license, and if he finds that the licensee has failed to comply with sanitary or health regulations or the general ordinances of the city relating to the conduct of the business, he is required to report the facts in writing to the mayor, who may, in his discretion, revoke the license. The fees required for licenses are not consistent, the first ordinance requiring a license fee of $200 for each retail or wholesale dealer and $15 for each junk wagon used in the business. Under the later ordinance the fee is $250 for a retail license and $300 for a wholesale license. The provisions in regard to location are repugnant. The first ordinance requires every license granted to designate the place in which the business is to be carried on, and in case of a removal from such location, the giving of notice to the city collector and having the change noted upon the license. Section 3524F of the later ordinance, which provides for the location of places for the purpose of engaging in the business of dealers in waste materials, has been already referred to, and is much stricter than and entirely inconsistent with the provisions of the earlier ordinance. Penalties are provided for various offenses against the first ordinance, consisting of fines from a minimum of $10 to a maximum of $200. The penalties for like offenses against the later ordinance consist of fines ranging from a minimum of $25 to a maximum of $200, and different offenses are declared in the two ordinances. In regard to inspection, the first ordinance provides that the places of business and all junk of every retail junk dealer shall at all reasonable times be open to the inspection of any mem-

ber of the police department, and that any member of the
police department shall at any reasonable hour have a right
to inspect the premises of any wholesale junk dealer and
view all junk purchased, received, collected or stored on the
premises whenever there shall be filed with the superintend-
ent of police, by the owner or his agent, a sworn written.
statement that the owner or his agent has cause to believe
that certain stolen goods or things specifically described in
the sworn statement are in the possession of such whole-
sale junk dealer.   The provision in the later ordinance on
this subject is, that every person licensed under the ordi-
nance shall, when proper demand is made, exhibit any and
all goods, waste materials or waste commodities in his pos-
session as such licensed dealer, or contained or kept in his
place of business, to any member of the police department
or to the mayor or any alderman.

   Clearly, the later ordinance is a revision of the whole
subject, and even if the motive for its adoption was that
suggested by the counsel for the appellees, the provisions of
the later ordinance are so repugnant to those of the earlier
that they cannot stand together and the later ordinance must
be regarded as having repealed the former.   (*Naylor* v.
*City of Galesburg,* 56 Ill. 285; *Booth* v. *Town of Car-
thage,* 67 id. 102.)   If two statutes are clearly repugnant
to each other, the last one enacted operates as a repeal of
the former.   (Potter's Dwarris on Statutes, 155; *Illinois
and Michigan Canal* v. *City of Chicago,* 14 Ill. 334; *Culver*
v. *Third Nat. Bank,* 64 id. 528; *Devine* v. *Board of Com-
missioners,* 84 id. 590; *People* v. *Town of Thornton,* 186 id.
162; *Public Utilities Com.* v. *Cleveland, Cincinnati, Chicago
and St. Louis Railway Co.* 283 id. 374; *People* v. *Williams,*
309 id. 492.)   The later ordinance must be taken as a sub-
stitute for the former, which, except as to transactions past
and closed, must be regarded as if it had never existed.
(*Illinois and Michigan Canal* v. *City of Chicago, supra.*)
After March 28, 1924, the only ordinance on the subject

was the ordinance of that date, and on November 12, 1924, the city council passed an ordinance repealing the ordinance of March 28, 1924. The effect of the repeal of this ordinance was to put an end to all proceedings growing out of it and to leave the city without any ordinance providing for the licensing of junk dealers and the regulation of their business.

The rule of the common law that where one statute is repealed by another, the repeal of the repealing statute revives the statute repealed does not apply to municipal ordinances, particularly in view of the general rule of public policy of the State indicated by section 3 of chapter 131 of the Revised Statutes, which provides that no act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act, and in view of the provision contained in section 13 of article 4 of the constitution, that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." When the original bill was filed, in September, 1924, the ordinance of March 28, 1924, was in force. This ordinance was expressly repealed on November 12, 1924. Afterward the amended bill was filed alleging the repeal of the ordinance. Since it appeared from the bill that no ordinance was in force on which the suits against the complainants could be maintained, the demurrer to the bill should have been overruled. There is no statute saving rights accruing under a municipal ordinance which has been repealed by a later ordinance having no clause saving such rights.

The decree will be reversed and the cause remanded, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*