In the Matter of the Application of WILLIAM J. LEACH, Petitioner, for an Alternative Prohibition Order against DOUGLAS KENYON, as Police Justice of the Village of Belle Terre, Respondent.

Supreme Court, Suffolk County, January 10, 1933.

*Foley & Martin* and *Patrick J. Dobson*, for the petitioner.

*Taylor & Roberts*, for the village of Belle Terre.

CUFF, J.   This is an application for an alternative prohibition order against the police justice of the village of Belle Terre, directing him to refrain from proceeding with the trial of petitioner.

The controversy surrounds the desire of the residents of the recently formed village of Belle Terre to prevent a sand and gravel company from operating. The sand company purchased its land on December 4, 1930, and immediately started to work it so that by January, 1931, a plant that cost $18,000 stood upon the property. In January, 1931 (the exact date does not appear), the village of Belle Terre was incorporated. On January 24, 1931, at a time when the sand company was elaborately engaged in removing the sand, the newly formed village enacted ordinance No. 1, the ordinance in question. It made the removal of sand for commercial purposes within the village a criminal offense. On February 28, 1931, petitioner, an employee of the sand company, was arrested for violating this ordinance.

On March 23, 1931, the village enacted a zoning ordinance, which also made removing sand for commercial purposes a criminal offense.

Petitioner pleaded not guilty to the charge and a trial followed before the police justice of the village, respondent's predecessor. The taking of evidence commenced on February 28, 1931, and continued until August 3, 1931. Thirty-three trial days were required, 2,868 typewritten pages of testimony were taken, and 246 exhibits received in evidence. It is to prevent a retrial of that case that petitioner acts.

The court record shows that on September 15, 1931, the action was marked, by the trial justice, "case closed." Before the judge rendered his decision, and on October 29, 1931, he died.

Petitioner is merely a pawn in this proceeding. The sand company is determined to remove sand, while the village authorities are equally determined to stop the company. It would seem that the rights of these parties should be adjudicated in the Supreme Court in the ordinary way.

However, as the matter is presented to me, it concerns the existence or non-existence of a criminal charge against petitioner.

The question is: Was ordinance No. 1 repealed by the zoning ordinance, and, if it was repealed, what becomes of the information lodged against petitioner?

A well-defined principle of law, recognized in this State, other States, and the Federal courts, is: Where a later act covers the whole subject of an earlier one, embraces new provisions plainly showing that it was intended not only as a substitute for the earlier act, but to cover the whole subject then being considered by the Legislature and to prescribe the only rules in respect thereto, it will operate as a repeal of the former statute relating to such subject-matter, even if such former act is not in all respects repugnant to

the new act. (*City of Buffalo* v. *Lewis*, 192 N. Y. 193, 200; *Pratt Institute* v. *City of New York*, 183 id. 151; Black Interp. Laws, 116; *Matter of Troy Press Co.*, 94 App. Div. 514; affd., *sub nom. Troy Press Co.* v. *Clerk of Board of Suprs. of Rensselaer County*, 179 N. Y. 529; *Matter of Brooklyn, Q. C. & S. R. Co.*, 185 id. 171.) The two ordinances should be scrutinized. Ordinance No. 1 follows:

" Prohibition of Excavation. In order to protect the property, safety, health and morals of the inhabitants of the village, to preserve peace and good order, to promote the welfare of the inhabitants of the village and of the public generally, and in order to conserve the natural beauty and physical advantages of the territory of the villages and the land of its inhabitants, and to protect the same from destruction, and to regulate its use for the pleasure and enjoyment of the inhabitants of the village, and for the good government of the village, its management and business and in order to prevent and to abate any public nuisance which may arise or has arisen through the unrestricted excavation of sand and gravel, or other soil material, within the village limits, it shall be unlawful for any person to excavate, dredge or otherwise displace sand and gravel, or other soil material, within the village limits, or to assist or direct in so doing, and /or remove and sell the same as part of a commercial sand and gravel operation, and any such excavating, dredging or displacement of such sand and gravel, or other soil material, is hereby declared to be a public nuisance and is hereby prohibited. All persons participating in any violation of this ordinance, either as proprietors, owners, tenants, managers, superintendents, engineers, chauffeurs, truck drivers, firemen or otherwise, shall be severally liable therefor. The provisions of this ordinance shall not apply to the excavating or dredging of sand or gravel, or other soil material, where such excavating or dredging is for the purpose of leveling or grading the property with reference to adjoining property or streets, or where such excavating or dredging is incidental to the erection of any residence or legalized structure in connection therewith within the village limits and where the excavation is to be covered or filled in to the preexisting grade, but in such cases a written permit or license shall first be obtained from the village clerk as authorized by the Board of Trustees before any such excavating is engaged in.

"A violation of this ordinance shall be punishable by a fine of One hundred ($100) Dollars for each and every person violating the same for each and every day that the violation thereof continues, and the violation of this ordinance shall constitute disorderly conduct, and a person violating the same shall be a disorderly person,

and any violation hereunder shall constitute disorderly conduct and any person violating this ordinance shall be a disorderly person."

The zoning ordinance embraces six articles. The title of it is: "Ordinance Regulating and Restricting the Location and Use of Building and All Land for Trade, Industry, Residence and Other Purposes." Then follows the preamble: "For the purpose of promoting the health, safety, morals and general welfare of the community, the undersigned Board of Trustees of the Village of Belle Terre, in accordance with a comprehensive plan and with a view of conserving the value of buildings and encouraging the most appropriate use of land throughout the said village, do hereby regulate and restrict the use of land and the location and use of buildings and structures within the village limits as hereinafter set forth."

Article 1, the "Use District," establishes the whole village as a "Residence District." Article 2, the "Area District," creates two sets of restrictions. Article 3 provides that a business district may be created after a referendum. Article 5, entitled "Special Provisions," gives power to vary and modify the restrictions. Article 6, headed "Administration," provides the machinery to put the ordinance into effect. Article 4, which deals with sand, will be considered. Section 3 follows: "The excavation of sand and gravel and/or its removal and sale as part of a commercial sand and gravel operation is expressly prohibited and no factory or plant in connection with such sand and gravel operation shall be erected, altered or used within the limits of the village for the purpose of manufacturing and/or preparing for marketing by the cleaning, sifting, processing, sorting, loading or otherwise of such sand and gravel. This provision shall not prohibit the excavating or dredging of sand and gravel or other soil material where such excavating or dredging is for the purpose of levelling or grading property with reference to adjoining property or streets, or where such excavating or dredging is incidental to the erection of any residence or legalized structure in connection therewith, and where the excavation is to be covered or filled in to the pre-existing grade. But in such cases a written permit or license shall first be obtained from the Village Clerk, as authorized by the Board of Trustees before any such excavating is engaged in."

Section 5 of article 6 imposes the penalty for violating section 3 of article 4 or any other provision of the ordinance. It follows: "For any and every violation of the provisions of this ordinance, the owner, general agent or contractor of a building or premises where such violations have been committed or shall exist, and the lessee or tenant of an entire building or entire premises where such

violation has been committed, or shall exist, and the owner, general agent, contractor, lessee or tenant of any part of a building or premises in which part such violation has been committed or shall exist, and a general agent, architect, builder, contractor, or any other person who commits, takes part or assists in such violation or who maintains any building or premises in which such violation shall exist, shall for each and every violation be subject to a fine of not more than One hundred ($100) Dollars and a further fine of not more than One hundred ($100) Dollars per day for each and every day that said violation continues.

" In addition to the fine and penalty above provided a violation of the provisions of this ordinance shall constitute disorderly conduct, and the person violating the same shall be a disorderly person; and any violation hereunder shall constitute disorderly conduct, and any person violating the ordinance shall be a disorderly person.

" Whenever the Mayor, or the Board of Trustees of the Village is satisfied that any building or structure or any portion thereof permitted or forbidden is being used, erected, constructed, altered or repaired in violation of, or not in compliance with, any of the provisions or requirements of this ordinance, he, or they, may, in his or their discretion; through the attorneys for the village, institute any appropriate action or proceeding at law or in equity, to restrain, correct, abate or remove such violation or the execution of any work thereon, or to restrain or correct the use, creation, or alteration, of, or to acquire the removal of, or to prevent the occupancy or use of the building or structure erected, constructed or altered in violation of, or not in compliance with, any of the provisions of this ordinance.

" The attorneys for the village are authorized to institute all actions and proceedings, either legal or equitable that may be appropriate or necessary for the enforcement of the provisions of this ordinance."

Clearly the zoning ordinance is comprehensive. It says it is in its preamble " * * * in accordance with a comprehensive plan. * * * " It is the usual zoning ordinance with penalties for violations. By section 3 of article 4 removal of sand is prohibited. In section 5 of article 6 penalties are prescribed. The zoning ordinance by these two sections and its preamble includes all of the elements contained in ordinance No. 1. It covers the whole subject, and that was the plain intention of it. It prescribes the only rules with respect to the subject. The earlier act, ordinance No. 1, could not continue after the zoning ordinance's enactment. If it remained in force, one act would be the subject of two prosecutions, two penalties. Such treatment of

a subject is unreasonable. If carried to the extreme, the violators could be subjected to penalties greater than those prescribed for felons by the law of the State, depending upon the number of ordinances adopted denouncing the same act. The zoning ordinance repealed ordinance No. 1.

I am not unmindful of the fact that affidavits have been submitted which declare that repeal was not the intention of the village board. The intent of legislators is illuminating and sometimes controlling when there is doubt as to the meaning of a statute, but, where no doubt exists, the statute cannot be amplified by extraneous explanations. It must stand on its own feet.

What is the effect of the repeal on the charge that is pending? Under the common law the repeal of a legislative enactment wiped out the act for all purposes.

" I take the effect of repealing a statute to be, to obliterate it as completely from the records of the parliament as if it had never passed." ( *Kay* v. *Goodwin,* 6 Bing. 576, 582, 583.)

" At common law the repeal of a statute ended all rights that were given by it, and it operated as a pardon of all offenses under it, and superseded the jurisdiction of the court in any suit pending, to enforce a penalty under such repeal statute." (*Rutherford* v. *Swink,* 96 Tenn. 564, 566, 567; 35 S. W. 554, 555.)

In *United States* v. *Van Vliet* ([D. C.] 22 Fed. 641, 643) Judge BROWN said: " I understand the law to be well settled that a penal statute cannot be enforced after it has been repealed, though the offense has been committed before such repeal, unless there be a saving clause reserving a right of prosecution (*Anon.,* 1 Wash. C. C. 84 [Fed. Cas. No. 475]; *U. S.* v. *The Helen,* 6 Cranch, 203.) "

In *Naylor* v. *City of Galesburg* (56 Ill. 285, 287) the court said: " This is a quasi criminal prosecution, and the law is too well settled to require argument, that the repeal of an ordinance puts an end to all proceedings growing out of it, and pending at the time of repeal, unless saved by a clause in the repealing ordinance. The *subsequent ordinance is clearly a revision of the first, and a substitute for it.* The one against which the offense was committed was not subsisting at the time of the trial in the circuit court. (*Board of Trustees, etc.,* v. *City of Chicago,* 14 Ill. 334.) "

Recognizing the far-reaching effect of the common law on repealed statutes and to nullify it, this State passed sections 93 and 94 of the General Construction Law. Respondent claims that these statutes preserve ordinance No. 1 for the purpose of prosecuting petitioner for his offense committed before the repeal.

I cannot agree with this. Sections 93 and 94 restrict the common-law rule as to statutes, not ordinances.

Section 93 begins: " The repeal of a *statute* or part thereof shall not affect or impair any act done, offense committed," etc.

Section 94 in part reads: " Unless otherwise specially provided by law, all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a *statute* so repealed.   *   *   * "

In *Matter of Yeoman* (131 Misc. 669, at p. 670), a case exactly in point, the court said: " Prosecutions *under a statute are preserved* although the statute be repealed. (Gen. Const. Law, §§ 93, 94.) But *ordinances* and rules and regulations adopted by municipalities are not preserved, in the absence of a statute to that effect. The preservation by statute of proceedings begun under statutes repealed, are an exception to the common-law rule, which has not been extended to the ordinances, rules and regulations of the city of Rochester."

In *Rutherford* v. *Swink* (96 Tenn. 564, at p. 568; 35 S. W. 554, 555) the court said: " It is manifest that a municipal ordinance is not a statute in the sense in which the word ' statute ' is used in said § 47 of the (M. & V.) Code " (similar to the New York General Construction Law).

Other jurisdictions have similarly held. In *Spears* v. *Modoc County* (101 Cal. 303, at p. 307; 35 Pac. 869, 870) the court said: " Section 329 of the Political Code [similar to New York General Construction Law] is limited in its application to the repeal of a ' law,' and does not extend to the repeal of a municipal ordinance." (See, also, *Naylor* v. *City of Galesburg*, 56 Ill. 285, 287.)

Ordinance No. 1 ceased to exist March 23, 1931, when the zoning ordinance repealed it. There being no saving clause contained in the zoning law, the prosecution of petitioner must fail. The information charging a violation of that repealed ordinance which is lodged in the court of the justice of the peace of the village of Belle Terre is a nullity. Petitioner and the sand company should not be put to the expense that a protracted retrial on the information would entail in order to obtain a decision as to the effect of the enactment of the zoning ordinance on ordinance No. 1.

The motion for an order of prohibition is granted.